Raymundo MALDONADO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–94–00073–CR.

Court of Appeals of Texas,
El Paso.

June 29, 1995.

John Gates, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for appellee/State.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Raymundo Maldonado appeals his convictions for the offenses of attempted capital murder and taking a firearm from a peace officer. A jury found Appellant guilty of two counts of each offense and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for terms of 50 and 30 years for the former offenses and 25 years for each of the latter offenses, whereupon the trial court entered judgment in accordance with the jury's verdict and ordered the sentences to run concurrently. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

On November 12, 1992, El Paso Police Officer Pedro Lozano was on routine bicycle patrol in El Paso's lower valley. He was wearing a standard bike patrol uniform consisting of a blue shirt with patches on each arm, a police badge on his chest, black shorts, black shoes, white socks, leather belt, and holster with nine millimeter handgun. Riding with two other bike patrol officers, Saul Villalobos and Julie Rocha, Lozano spotted three persons under a tree on a canal levy, an area known for drug activity. The persons' hand movements caused the officers to suspect a drug transaction, and they rode toward the tree to investigate.

As the officers approached, Appellant ran down the canal bank and away from the officers. Lozano detected the odor of burning marijuana in the area and shouted, "Police, stop." Appellant did not comply and Lozano gave chase. Lozano quickly found Appellant in the backyard of a residence, identified himself as a police officer, and asked Appellant for identification. Appellant refused and ran back toward the canal and then back again into the adjacent residential neighborhood. Lozano caught up with Appellant as Appellant jumped over a five-foot high chain-link fence, again instructed him to stop, and unsuccessfully attempted to seize him by his legs. Appellant then ran toward the fence gate, from the other side of which Rocha was approaching. Both officers told Appellant to stop. He again refused, bolted through the gate, knocked Rocha to the ground, and continued running.

Lozano finally tackled Appellant and attempted to subdue him by placing his knee in Appellant's back while trying to talk to Appellant to calm him down. Appellant immediately began to struggle with Lozano. When Lozano attempted to handcuff Appellant, Appellant turned around and struck Lozano in the face. During the struggle, Appellant grabbed Lozano's gun with sufficient force to break the holster and remove the gun from it. As this occurred, Rocha ran up to assist, and Lozano shouted that Appellant had his gun. Both officers struggled with Appellant in an effort to wrest the gun from him. When they finally succeeded, Rocha tossed the gun several feet away while the struggle continued. Appellant then grabbed Rocha's gun and pulled it from her holster.

Rocha eventually pried her weapon from Appellant's grasp, whereupon Appellant, Lozano still trying to subdue him, crawled toward Lozano's gun and retrieved it. Lozano grabbed the weapon at the same time as Appellant and managed to engage the safety. As they struggled, Appellant pointed the gun at Lozano's stomach and pulled the trigger several times. The gun did not fire. Appellant again pointed the gun at Lozano's chest and unsuccessfully attempted to fire several more shots. Rocha could hear the gun click each time Appellant pulled the trigger. With the assistance of a neighbor who was drawn by the commotion, Lozano finally succeeded in taking his gun from Appellant, after which another police officer, Juan Castillo, arrived and helped to subdue and handcuff Appellant.

## II. DISCUSSION

■ Appellant attacks his convictions in four points of error. In Point of Error No. One, Appellant claims the trial court erred by admitting into evidence a photograph de-

picting him at the time of his arrest. The photo shows Appellant wearing a T-shirt on which the words "Born to Be Bad" appear. Appellant objected to the introduction of the photo as follows:

[W]e would object to [the photograph] because it is not—well, because the State is only trying to introduce it to prove that he didn't look good at the time. It's not a very good shot of his face and you really can't see the injuries to his face. And he has been roughed up and doesn't look very neat or clean.

On appeal, Appellant for the first time complains that the photo was inadmissible because the words emblazoned on his T-shirt constitute improper evidence of his character and argues that the photo was offered only to prove that he acted in conformity with this character.

■ The status of the photo as character evidence and its admissibility based thereon aside, Appellant has waived any error caused by the admission of the photo because his complaint on appeal does not comport with his objection at trial. For an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App. 1990); *Clemons v. State,* 893 S.W.2d 212, 216 (Tex.App.—El Paso 1995, no pet.). Specific objections are required so that the trial judge has an opportunity to rule and opposing counsel has an opportunity to remove the objection or supply other testimony. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim. App.1977). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State,* 782 S.W.2d at 870; *Clemons v. State,* 893 S.W.2d at 216. With the exception of the right of trial by jury, a defendant can waive any trial error, including constitutional error, by failing to properly object or request the proper relief. TEX.CODE CRIM.PROC.ANN. art. 1.14 (Vernon Supp.1995); *Clemons v. State,* 893 S.W.2d at 216; *Thompson v. State,* 802 S.W.2d 840, 842 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

Although Appellant clearly interposed some objection at trial, his first point of error

is not premised on that objection. His character evidence complaint was not advanced in any form at trial. This change in theory denied the trial court the opportunity to rule on his current complaint and presents nothing for review. Appellant's Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant claims the trial court erred by refusing to submit the defense of necessity to the jury. Significantly, Appellant fails to provide specific record references to the evidence that purportedly entitled him to a necessity instruction. He instead relies on "a review of all of the evidence," and claims that a reasonable inference from Appellant's physical struggle with police is that he so struggled to avoid being shot.

Appellant has waived any error caused by the trial court's refusal to include the instruction by failing to adequately brief the issue. Among other things, Texas Rule of Appellate Procedure 74(f) requires "a fair, condensed statement of the facts pertinent to [the point], with reference to the pages in the record where the same may be found; and ... such discussion of the facts and the authorities relied upon as may be requisite to maintain the point...." TEX.R.APP.P. 74(f). Appellant's global reference to the "evidence" obviously does not comport with Rule 74(f). Further, Appellant does not offer a reasoned explanation of **how** any evidence raises the issue of necessity. This, too, runs afoul of Rule 74(f). Appellant's second point of error is overruled. *See Etheridge v. State,* 1994 WL 273325 *8, 903 S.W.2d 1, 12 (Tex. Crim.App.1994) (citing rule 74(f) to conclude that Court need not address defendant's claim that his recorded oral statement was admissible under rule of optional completeness because defendant failed to identify "specific acts or declarations previously offered by the State that the excluded tape would have explained or contradicted.... [W]e decline to make his arguments for him.") (not yet released for publication); *Castillo v. State,* 810 S.W.2d 180, 182 n. 1 (Tex.Crim.App.1990) (finding argument inadequately briefed and refusing to address it where defendant failed to identify part of record where issue was preserved); *Pierce v.*

*State,* 777 S.W.2d 399, 418 (Tex.Crim.App. 1989) (finding waiver because defendant failed to cite relevant portions of record and articulate a legal theory to support his contention that trial court's refusal to give offered instruction on mitigating circumstances was erroneous), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990).

 Alternatively, we conclude that the evidence does not raise the issue of necessity. The defense of necessity is available for criminal conduct only when:

(1) the defendant reasonably believes his conduct is necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the law otherwise proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX.PENAL CODE ANN. § 9.22 (Vernon 1994); *Roy v. State,* 552 S.W.2d 827, 830–31 (Tex. Crim.App.1977), *overruled on other grounds by, Johnson v. State,* 650 S.W.2d 414, 416 (Tex.Crim.App.1983). The issue of necessity must be submitted to the jury when raised, even if it is raised by weak or contradicted evidence. *Thomas v. State,* 678 S.W.2d 82, 85 (Tex.Crim.App.1984); *Williams v. State,* 630 S.W.2d 640, 643 (Tex.Crim.App.1982). But no affirmative defense, including necessity, need be submitted to the jury unless some evidence supports it. TEX.PENAL CODE ANN. § 2.03(c) (Vernon 1994).

 For the evidence to support submission of the necessity defense to the jury Appellant must admit the offense. *Trotty v. State,* 787 S.W.2d 629 (Tex.App.—Fort Worth 1990, pet. ref'd); *Leach v. State,* 726 S.W.2d 598, 599 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Like a plea of self-defense, Appellant must first admit the offense, but claim that his commission of it is justified because of other facts. *Trotty v. State,* 787 S.W.2d at 630; *Leach v. State,* 726 S.W.2d at 600. This is a product of the nature of the offense. One cannot establish that an act is justified without first identifying, or admitting to the commission of, the

predicate act. Appellant did not testify during the guilt-innocence phase of trial. His failure to do so or to otherwise admit his crimes prevents him from benefitting from the defense of necessity.

 In the further alternative, taking the elements in the order the statute lists them, the threshold issue is whether Appellant reasonably believed his conduct was necessary to avoid imminent harm. He did not testify to this effect, and the testimony of other witnesses supports no similar inference. To the contrary, the evidence was undisputed that Appellant ran when he first spotted police and thereafter ignored police instructions and avoided detention by running, jumping a fence, and knocking an officer to the ground while fleeing. One who unlawfully avoids police detention simply cannot claim that his criminal conduct is a necessary response to the legitimate police action that his illicit flight spawns. The evidentiary shortcoming we here identify, as well as the twofold inadequacy of his brief, is a product of Appellant's inability to support his apparent but, we emphasize, unstated theory that someone fleeing detention can invoke the defense of necessity to justify his attempt to disarm and shoot a peace officer. We decline to hold that every defendant who physically resists detention or arrest is entitled to an instruction on the issue of necessity simply because he resists. Point of Error No. Two is overruled.

In Point of Error No. Three, Appellant claims the trial court erred by instructing the jury that Appellant "is presumed to have known that the police officer was a police officer if the officer was wearing a distinctive uniform or badge indicating his employment, or if the officer identified himself as a peace officer" in accordance with Section 38.17(c) of the Texas Penal Code. When the trial court originally proposed to give this instruction for all four counts, Appellant objected, vaguely arguing that "it is not as this presumption is . . . presented somewhere else in the Texas Penal Code and made to apply to all offenses involving peace officers." The trial court agreed and expressly limited the applicability of the instruction to the taking a firearm from a peace officer offenses. On

appeal, Appellant for the first time complains of the trial court's failure to instruct the jury that the presumption is merely permissible as required by Section 2.05(2) of the Penal Code.

We earlier set out the controlling principles for preservation or error, and they apply equally to jury instructions. Because Appellant did not object to the absence of the Section 2.05 explanation at trial, and because he received all the relief he requested by the objection he did make at trial, he has waived any error the omission may have caused. Appellant largely acknowledges his waiver, but argues that omission of the disputed explanation was fundamental error. An exception to general waiver principles exists for fundamental error. *See* TEX.R.APP.P. 52(a); TEX.R.CRIM.EVID. 103(d); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985); *Williams v. State,* 773 S.W.2d 525, 531 (Tex. Crim.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989); *Peoples v. State,* 874 S.W.2d 804, 807 (Tex. App.—Fort Worth 1994); *Francis v. State,* 801 S.W.2d 548, 551 (Tex.App.—Houston [14th Dist.] 1990), *pet. ref'd, per curiam,* 805 S.W.2d 474 (Tex.1991). When no proper objection is made at trial, error in the jury charge will mandate reversal only if it is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Almanza v. State,* 686 S.W.2d at 171. In making this determination, we examine the harm caused in light of the entire jury charge, the state of the evidence, and any other relevant information in the record. *Id.*

The State confesses error in the omission of the Section 2.05 explanation, but correctly argues that it did not render Appellant's trial fundamentally unfair. The evidence that Appellant knew his intended victims were police officers is overwhelming. The officers were dressed in police uniforms that displayed distinctive police badges. The officers more than once orally identified themselves as police officers. Further, the officers were armed. Whatever the vagaries of proving a defendant's knowledge of an officer's status for other offenses, the offense of taking a firearm from a peace officer offers unique evidentiary convenience be-cause of the critical act required to commit the offense. Both officers testified that Appellant violently removed their weapons from their holsters. Thus, Appellant at some point realized that both officers were armed. That he did so provides very strong evidence that he realized that the three uniformed persons who engaged in a coordinated public pursuit of him were peace officers, at least to the extent that similarly organized pursuits by private citizens who wear identical uniforms and carry firearms are, we are certain, exceedingly rare. For even the least gifted criminal, such a pursuit informs him that his pursuers are peace officers.

Moreover, at trial, Appellant never questioned whether he knew the officers were police officers and actually did much to concede the issue. Appellant's defense was that he was chased by police for no reason and that he attempted to use their weapons against them because he feared he would be shot. Appellant's argument that his actions were only responses to police conduct effectively concedes his awareness that his purportedly anonymous pursuers were peace officers. In light of Appellant's implicit concession of the issue and the overwhelming evidence on the matter, we conclude that the omission of the Section 2.05 instruction did not cause Appellant's trial to be so plagued by error as to be fundamentally unfair. Accordingly, Appellant's Point of Error No. Three is overruled.

In Point of Error No. Four, Appellant claims the evidence that he knew that police were acting in the lawful discharge of their duties is insufficient. In reviewing the sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App. 1991); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Crim.App.1987). Our role is not to ascertain whether the evidence

establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim. App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Clemons v. State*, 893 S.W.2d at 212, 214. We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991); *Ontiveros v. State*, 890 S.W.2d 919, 927 (Tex. App.—El Paso 1994, no pet.); *Rivera v. State*, 885 S.W.2d 581, 583 (Tex.App.—El Paso 1994, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d at 843 (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)).

Our resolution of Appellant's Point of Error No. Three does much to dispose of Point of Error No. Four, and the evidence bearing on the former is equally relevant to the latter. The testimony of the police provided adequate evidence on the matter. They testified that Appellant ran as soon as he spotted them, and that they smelled burning marijuana in the area where Appellant originally stood. A reasonable inference to be drawn from this evidence is that Appellant was smoking marijuana and fled because he knew his act was criminal. We think it a small logical leap to conclude that one who flees police while smoking marijuana acknowledges by his flight that police are at least empowered to temporally detain him. Appellant's Point of Error No. Four is overruled.

Having overruled Appellant's points of error, we affirm the judgment of the trial court.