BOWEN V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-239-CR

LYDIA HERNANDEZ BOWEN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE COUNTY COURT AT LAW OF WISE COUNTY

------------

OPINION

------------

Appellant Lydia Hernandez Bowen appeals her conviction for resisting arrest.  In two points on appeal, she contends that the trial court abused its discretion by failing to instruct the jury on the necessity defense and that the trial court erred by denying her motion for directed verdict on her self-defense claim.  We affirm.

FACTUAL BACKGROUND

On January 26, 2001, Appellant was arrested for disorderly conduct and public intoxication.  She was arrested in the front yard of her rural house by Deputy William D. Hamilton.  Appellant and Deputy Hamilton gave conflicting testimony concerning the arrest.
(footnote: 1)
 Deputy Hamilton testified he was dispatched to a disturbance at Appellant’s residence and was warned by the dispatcher that there was a possibility of weapons on the scene.  The police chief, state troopers, and other deputies were at the scene when he arrived, as were about fifteen to twenty adults and several juveniles, most of whom were Appellant’s family members who lived nearby.  

Deputy Hamilton described Appellant as becoming very loud and belligerent about youths racing on the private road by the property.  Then she became upset with him.  Although he warned Appellant to watch her language, she continued shouting and using abusive language.  Deputy Hamilton could also smell such a strong odor of alcohol on Appellant’s breath that he performed the horizontal gaze nystagmus sobriety field test on her.  Deputy Hamilton then told Appellant and her husband that he was arresting both of them for disorderly conduct.  As he grabbed her right hand to place the cuffs on her, she tried to pull away, stating she was not going to jail and was going back to her house.  Deputy Hamilton acknowledged that Appellant did not use any force against him before he took her to the ground.  Because he had been told there were weapons at the scene, Deputy Hamilton said that he was concerned Appellant could retrieve a weapon or barricade herself in the house.   Deputy Hamilton took Appellant to the ground by kicking her feet out from underneath her as she tried to run toward the house.  With the assistance of a civilian officer, Deputy Hamilton knelt beside Appellant and, with his knee in her back, secured the handcuffs behind her back.  He explained to her what was going on and gave her time to calm down.  He told her she was in custody and was going with him.  When she calmed down, he helped her to her knees, then to her feet, and walked her to the patrol car, where she was ordered to sit in the rear passenger seat.  Deputy Hamilton testified that Appellant then again became belligerent, cursing and screaming, and that she kicked him in the shin. 

Appellant testified that Deputy Hamilton was talking to her husband when she came out of the house.  She approached them and asked the officer what was going on.  She had three wine coolers that evening and did not feel she was intoxicated.  No one asked her to perform an HGN test.  Appellant admitted that Deputy Hamilton told her she was being arrested, but denied that he explained why.  He grabbed her by the wrist, turned her around, twisted her arm up behind her back, and placed the handcuffs on one of her wrists.  She took “a step” back toward her home, struggled to turn, and asked why she was being arrested.  Deputy Hamilton then kicked her feet out from underneath her, and she landed on the ground.  Deputy Hamilton landed directly on top of her and then used his knees to pin her to the ground.  Two other officers assisted Deputy Hamilton, forcing Appellant’s face into the dirt, such that she had difficulty breathing.  Appellant said she struggled for air, screamed for help, and that she was hurting. 

Under Appellant’s version, once the officers restrained her in handcuffs, they lifted her directly from the ground to her feet, using only the handcuffs and her forearms.  Appellant thought she felt her arm pop out of its socket. According to Appellant, she then began kicking and struggling to regain her balance and to stop the officers from hurting her, and in the process, she kicked Deputy Hamilton.  Appellant stated the kicking occurred when Deputy Hamilton was lifting her up, not after they had walked her to the car.  Appellant was charged by information and complaint with resisting arrest, search, or transport by using force against a peace officer.  Appellant pleaded not guilty and was tried by a jury, which found her guilty as charged.  Appellant was sentenced to a fine of $500 by the court. 

DISCUSSION

Necessity

In her first point, Appellant claims that the trial court abused its discretion by denying her requested jury instruction on the defense of necessity.  
See 
Tex. Penal Code Ann.
 §§ 9.02, 9.22 (Vernon 2003).  A defendant has the right to an instruction on a defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may believe about the credibility of the defense.  
Hamel v. State
, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).  A defendant’s testimony alone may suffice to raise a defensive issue requiring submission of an instruction on a defensive issue.  
Pennington
 
v. State
, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth 2001, pet. ref’d) (citing 
Hayes v. State,
 728 S.W.2d 804, 807 (Tex. Crim. App. 1984)).  We view the evidence submitted in support of the defense in the light most favorable to the defendant.  
Id.

Conduct that would otherwise be criminal is justified by “necessity” if:  (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighs, under ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.  
Tex. Penal Code Ann.
 § 9.22.  In addition, a judicially imposed predicate for submission of necessity as a defense requires that a defendant first admit commission of the offense before offering necessity as a justification.  
Young v. State
, 991 S.W.2d 835, 839 (Tex. Crim. App.) (holding necessity defense not warranted where defendant denied both commission of offense and acts alleged), 
cert. denied, 
528 U.S. 1063 (1999); 
East v. State, 
76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.) (noting all justification defenses require admission of commission of the offense); 
Pennington, 
54 S.W.3d at 856 (same);
 see also Maldonado v. State
, 902 S.W.2d 708, 712 (Tex. App.—El Paso 1995, no pet.) (holding instruction on necessity not raised where defendant claimed he was trying to prevent being shot when he struck officer in face and wrested gun from another officer’s holster).

In denying Appellant’s requested instruction, the trial court stated he did not feel that the facts of the case raised the defense of necessity and that self-defense was the appropriate defensive submission under the evidence involving force against a police officer.  Appellant responds to the trial court’s reasoning by arguing that the defense of necessity is available regardless of whether the alleged victim is a police officer, noting that it has been found to be an appropriate submission in cases involving resisting arrest.  Appellant also argues that she was entitled to the submission of the instruction on necessity as well as self-defense because necessity has different elements and does not require that the officer first use greater force than necessary before the defendant offers “resistance,” as does the self-defense statute.

On appeal, the State argues that the trial court properly refused the submission because Appellant failed to satisfy the requirement imposed by case law that the defendant admit commission of the offense in order to invoke the defense of necessity.  
While the cases generally state that a defendant must admit committing the “offense,” defendants have been held entitled to submission of a justification defense such as necessity where they admit the conduct alleged even though they deny an element of the offense such as intent.  
See, e.g., Vasquez v. State
, 830 S.W.2d 948, 950 (Tex. Crim. App. 1992) (holding admission by felon of possession of firearm sufficient admission of offense to require submission of necessity defense where he stated he needed gun to escape after being kidnaped by gang members); 
Willis v. State
, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990) (holding denial of knowledge that goods were stolen did not preclude submission of justification defense of good faith purchase); 
Martinez v. State
, 775 S.W.2d 645, 647 (Tex. Crim. App. 1989) (holding admission that defendant held gun, had finger on trigger, and fired it sufficient for submission of self-defense although he denied intent to kill).

Appellant admitted kicking or hitting in the direction of the officers, including Deputy Hamilton, when she was raised from the ground.  She insisted, however, that she was hurting and that she was only kicking and struggling to regain her balance.  She admitted she was trying to get the officers to stop what they were doing, but she denied intentionally kicking at them to try to stop them from taking her to jail.  

In response to the arguments of the State as well as the reasoning of the trial court, Appellant relies on 
Darty v. State
, 994 S.W.2d 215, 218 (Tex. App.—San Antonio 1999, pet. ref’d), which held that the trial court erred in failing to submit an instruction on necessity, in addition to an instruction on self-defense, as justification for the defendant’s conduct in resisting arrest by allegedly kicking a police officer.  In that case, the defendant testified that, during a traffic stop, the policeman threw him on his neighbor’s car, beat him with his flashlight, and placed him in a choke hold.  
Id
. at 218.  The defendant denied kicking the officer, but admitted he used some force to escape the chokehold because he could not breathe. 
 Id
.  He denied resisting arrest, stating he was not told he was under arrest until after the conduct occurred.  
Id.
  Appellant points out that, in
 
Darty
, 
the court held that the defense of necessity should have been submitted even though the defendant refused to admit the offense of resisting arrest.  
Id
. at 219.  

As noted above, other case law has recognized that, where the defendant admits the underlying conduct charged but denies an element of the offense, he or she may still be entitled to the submission of an instruction on a justification defense, including necessity, even though they have not admitted committing the offense.  
Vasquez,
 830 S.W.2d at 950; 
Willis
, 790 S.W.2d at 314; 
Martinez
, 775 S.W.2d at 647.  We believe, however, that those cases, including 
Darty, 
specifically, are distinguishable.  

First, in 
Darty
, which is the only case we have found allowing the defense of necessity to be submitted in a case involving resisting arrest, the court found it significant that the defendant testified to his belief that he was being subjected to undue force and harassment by the officer, rather than an arrest, and that he testified he resisted with force
 before 
he was told he was under arrest.  
Id.
  The court noted that he had previous encounters with the same officer resulting in charges of racial harassment.  
Id
. at 220 & n.1.  The court concluded that the defendant may not have understood that he was being placed under arrest and that his testimony presented evidence of his state of mind as required to meet the first element of the necessity defense, i.e., “his reasonable belief that his conduct was immediately necessary to avoid imminent harm.”  
Id
. at 219.

Unlike the defendant in
 Darty
, Appellant knew before any force was used by the officer that she was being placed under arrest.  There was no basis in the record for her to believe otherwise or for her to believe that anything else was occurring.  She simply denied that she “intentionally” resisted arrest, but was trying to regain her balance and stop the officers from hurting her.  Accepting Appellant’s argument would allow any person to obtain submission of a necessity defense based upon a struggle involving use of force against a police officer when that person knows they are being placed under arrest, by later claiming he or she was only trying to avoid being hurt.  

In contrast to 
Darty,
 we note that the El Paso Court of Appeals held in 
Maldonado
 that the defense of necessity was properly refused where the evidence established that the defendant fled from a scene known for drug activity upon arrival of a police officer patrolling the area; knocked the officer down during the chase; struggled with two officers after he was tackled, grabbing both officers’ guns from their holsters in the process; and even pulled the trigger of the second gun, which failed to fire.  902 S.W.2d at 712.   Rejecting the argument that the evidence raised a reasonable inference that the defendant was attempting to avoid being shot, the court noted that the appellant did not admit conduct and, indeed, did not testify, and the court held that one who unlawfully avoids police detention cannot later claim that his criminal conduct was necessary in response to police efforts spawned by his illicit flight.  
Id
.  In holding that the necessity defense was properly refused, the court stated, “We decline to hold that every defendant who physically resists detention or arrest is entitled to an instruction on the issue of necessity simply because he resists.”  
Id
.

We agree with Appellant that she sufficiently met the judicially imposed requirement of admitting commission of the alleged offense of resisting arrest by admitting the alleged act of kicking the officer even though she denied her intent to resist arrest by that conduct.  However, we do not believe that this admission entitles her to submission of the necessity defense under the facts of this case.  

“The plain language codifying the necessity defense evinces a legislative intent that the defense apply to all offenses unless the legislature has specifically excluded it from them.”  
Spakes v. State
, 913 S.W.2d 597, 598 (Tex. Crim. App. 1996); 
see
 
Tex. Penal Code Ann.
 § 9.22(3) (listing requirement that “a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear”).  We believe that a legislative purpose to exclude the defense of necessity except under certain narrow circumstances does plainly appear in section 9.31 of the penal code, which states that use of force against another is not justified “to resist an arrest or search that the actor knows is being made by a peace officer . . . even though the arrest or search is unlawful,” except in one limited circumstance, where excessive force by the officer is first used.  
Tex. Penal Code Ann.
 § 9.31(b) (Vernon 2003).  That statute states in pertinent part:

(b) The use of force against another 
is not justified
:

. . . . 

(2) to resist an arrest or search that the actor knows is being made by a peace officer . . . even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c);

. . . . 

The use of force to resist an arrest or search is justified:

if, before the actor offers any resistance, the peace officer  . . . uses or attempts to use greater force than necessary to make the arrest or search; and

when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer’s . . . use or attempted use of greater force than necessary.

Id
.

Thus, the general rule is that the use of force to resist arrest that the actor knows is being made by a peace officer is not justified even if the arrest is illegal.  
See Darty
, 994 S.W.2d at 219 (citing 
Garner v. State
, 858 S.W.2d 656, 661 (Tex. App.—Fort Worth 1993, pet. ref’d)).  An “exception” exists when the peace officer first uses or attempts to use greater force than necessary to make the arrest and search, and even then, the defendant may only use the degree of force immediately necessary to protect himself or herself against the officer’s use of greater force.  
Id.; see Aguilar v. State, 
914 S.W.2d 649, 651 (Tex. App.—Texarkana 1996, no pet.) (holding defendant entitled to submission of defense of “excessive force” under section 9.31(c) where girlfriend testified she saw defendant thrown to ground and “all of a sudden [the officers] were on top of him” before he had made threatening or resisting moves, raising inference that officers used prior excessive force).   
  
 

In 
Darty
, the evidence raised issues as to whether the officer’s excessive force took place before the arrest, rather than in making the arrest, and as to whether the defendant knew he was being arrested at the time of his use of force to resist the officer, thereby entitling him to submission of the broader defense of necessity in the event the jury chose to believe his testimony.   In contrast, in this case, there was no question that Appellant was being arrested when Appellant admittedly used force in kicking the officer, and she admittedly knew at that time that she was being placed under arrest by a peace officer.  Therefore, under the evidence here, section 9.31(b) precluded the defense of necessity as justification for the offense of resisting arrest.  We hold that the trial court correctly refused to submit necessity as a defense, and  adequately and properly submitted Appellant’s justification defense as allowed by the exception set forth in section 9.31(c), allowing use of force in self-defense to protect against prior use of excessive force by the officer.  We overrule Appellant’s first point.

Self-Defense

In her second point, Appellant argues that the trial court erred by denying her motion for directed verdict because the evidence established her defense of self-defense as a matter of law.  
See 
Tex. Penal Code Ann.
 § 9.31(c).  The substance of Appellant’s argument, however, attacks both the legal and factual sufficiency of the evidence to defeat her prima facie showing of self-defense, which the trial court submitted at her request.  We will, therefore, construe her appeal as encompassing both legal and factual sufficiency complaints, as well as a challenge to the trial court’s denial of her motion for directed verdict.

When reviewing legal sufficiency of the evidence to support a verdict, we view all of the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 99 S. Ct. 2381 (1979); 
Wesbrook v. State
, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  When a defendant challenges the legal sufficiency of evidence to support rejection of a defense such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt.  
Saxton v. State
, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

The defendant has the burden of producing some evidence to support the claim of self-defense.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing 
Saxton
, 804 S.W.2d at 914).  Once the defendant produces such evidence, the State has the burden of disproving the defense.  
Id
.  The burden of persuasion does not require the State to produce evidence; rather, it requires only that the State prove its case beyond a reasonable doubt.  
Id
.  When the jury finds the defendant guilty, it implicitly finds against the defensive theory.  
Id
.  

The factual sufficiency standard for guilt requires the reviewing court to ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury’s determination, or whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  A factual sufficiency challenge to a verdict implicitly rejecting a defense requires us to review all of the evidence in a neutral light and ask whether the State’s evidence, if taken alone, is too weak to support the finding and whether the proof of guilty, although adequate if taken alone, is against the great weight and preponderance of the evidence.  
Zuliani
, 97 S.W.3d at 594-95.

We reject Appellant’s argument that the trial court erred in failing to grant a directed verdict because the evidence established self-defense as a matter of law.  We agree with the State that the issue of self-defense, based upon the testimony of Appellant and her family that conflicts with that of the officers, was a fact issue for the jury.  
See Saxton
, 804 S.W.2d at 913-14; 
Manuel v. State
, 981 S.W.2d 65, 68 (Tex. App.—Fort Worth 1998), 
aff’d
, 994 S.W.2d 658 (Tex. Crim. App. 1999).  The jury was solely responsible for determining the credibility of the witnesses and was free to accept or reject the defensive evidence.
  Saxton, 
804 S.W.2d at 914.

We also reject Appellant’s legal and factual sufficiency complaints.  Under the applicable standards of review, we hold that the evidence was both legally and factually sufficient to support the verdict of guilty and the jury’s implicit rejection of Appellant’s claim of self-defense.  
See Zuliani
, 97 S.W.3d at 594-95;
 Saxton
, 804 S.W.2d at 913-14.
  The jury’s evaluation of the credibility of Appellant, her husband, and her father as witnesses was crucial to its verdict and the jury was the sole judge of the weight of their testimony contrasted to the conflicting testimony offered by the State.

As the State points out, Appellant argues that the officer did not reasonably believe that he could legally arrest Appellant for public intoxication and disorderly conduct because the land was private and those offenses must be committed in a public place, and therefore, he could not have been justified in using force.  However, on redirect examination, Deputy Hamilton testified that from his experience the land could become public or quasi-public, and he reasonably believed he could arrest her for those offenses.  From the facts observed at the scene, the jury could have concluded that he reasonably believed he could legally arrest Appellant for the offenses cited, based on her actions and the public nature of the area.  

As to Appellant’s argument that the State did not refute the evidence that the officer acted with excessive force before she offered any resistance, Deputy Hamilton and other officers testified she pulled away and tried to run to the house, stating she was not going to jail, before he used force to stop her.  The jury could have accepted Deputy Hamilton’s testimony that he believed the force he used was reasonable and not excessive.  The jury was also entitled to consider and accept the other officers’ testimony that Appellant struggled and fought with Deputy Hamilton, yelled obscenities, pulled away, and ran toward the house before he stopped her; that Deputy Hamilton did not “slam” or “throw” her to the ground or hold her face in the dirt; and that Appellant fought again at the car, was not hurt, but was “fine” when the police transported her. We overrule Appellant’s second point.

CONCLUSION

Having overruled both of Appellant’s points, we affirm the judgment of the trial court.   

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED:  August 7, 2003

FOOTNOTES
1:
Testimony from law enforcement witnesses corroborated Deputy Hamilton’s version of events, and Appellant’s family members corroborated Appellant’s version of events.