COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-02-239-CR

 

 

LYDIA HERNANDEZ BOWEN                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE COUNTY COURT AT LAW OF WISE COUNTY

 

                                              ------------

 

                                   OPINION
ON REMAND

 

                                              ------------








Appellant Lydia Hernandez
Bowen was tried before a jury for resisting arrest.  At the close of evidence, Appellant sought an
instruction on the defense of necessity, which the trial court refused.  Appellant appealed from her conviction, and
we affirmed the trial court=s denial of the necessity instruction. 
Bowen v. State, 117 S.W.3d 291 (Tex. App.CFort Worth 2003), rev=d, 162 S.W.3d 226, 203 (Tex. Crim. App.
2005).  The court of criminal appeals
reversed, holding that the trial court erred by failing to submit the necessity
defense and remanding the case to this court for a harm analysis.  Bowen, 162 S.W.3d at 203.  We reverse the trial court=s judgment and remand for a new trial.

                                            Background

On January 26, 2001, Appellant
was arrested for disorderly conduct and public intoxication.  She was arrested in the front yard of her
rural house by Deputy William D. Hamilton. 
Appellant and Deputy Hamilton gave conflicting testimony concerning the
arrest.[1]

Deputy Hamilton testified he
was dispatched to a disturbance at Appellant=s residence and was warned by the dispatcher that there was a
possibility of weapons on the scene.  The
police chief, state troopers, and other deputies were at the scene when he
arrived, as were about fifteen to twenty adults and several juveniles, most of
whom were Appellant=s family
members who lived nearby.  













Deputy Hamilton described
Appellant as becoming very loud and belligerent about youths racing on the
private road by the property.  Then she
became upset with him.  Although he
warned Appellant to watch her language, she continued shouting and using
abusive language.  Deputy Hamilton could
also smell such a strong odor of alcohol on Appellant=s breath that he performed the horizontal gaze nystagmus sobriety
field test on her.  Deputy Hamilton then
told Appellant and her husband that he was arresting both of them for
disorderly conduct.  As he grabbed her
right hand to place the cuffs on her, she tried to pull away, stating that she
was not going to jail and was going back to her house.  Deputy Hamilton acknowledged that Appellant
did not use any force against him before he took her to the ground.  Because he had been told there were weapons
at the scene, Deputy Hamilton said that he was concerned that Appellant could
retrieve a weapon or barricade herself in the house.  Deputy Hamilton took Appellant to the ground
by kicking her feet out from underneath her as she tried to run toward the
house.  With the assistance of a civilian
officer, Deputy Hamilton knelt beside Appellant and, with his knee in her back,
secured the handcuffs behind her back. 
He explained to her what was going on and gave her time to calm
down.  He told her that she was in
custody and was going with him.  When she
calmed down, he helped her to her knees and then to her feet, and walked her to
the patrol car, where she was ordered to sit in the rear passenger seat.  Deputy Hamilton testified that Appellant then
again became belligerent, cursing and screaming, and that she kicked him in the
shin. 

Appellant testified that
Deputy Hamilton was talking to her husband when she came out of the house.  She approached them and asked the officer
what was going on.  She had had three
wine coolers that evening and did not feel she was intoxicated.  No one asked her to perform an HGN test.  Appellant admitted that Deputy Hamilton told
her that she was being arrested, but denied that he explained why.  He grabbed her by the wrist, turned her
around, twisted her arm up behind her back, and placed the handcuffs on one of
her wrists.  She took Aa step@ back toward
her home, struggled to turn, and asked why she was being arrested.  Deputy Hamilton then kicked her feet out from
underneath her, and she landed on the ground. 
Deputy Hamilton landed directly on top of her and then used his knees to
pin her to the ground.  Two other
officers assisted Deputy Hamilton, forcing Appellant=s face into the dirt, such that she had difficulty breathing.  Appellant said that she struggled for air,
screamed for help, and was hurting. 








According to Appellant, after
the officers restrained her in handcuffs, they lifted her directly from the
ground to her feet, using only the handcuffs and her forearms.  Appellant thought that she felt her arm pop
out of its socket. She then began kicking and struggling to regain her balance
and to stop the officers from hurting her and, in the process, kicked Deputy
Hamilton.  Appellant stated that the
kicking occurred when Deputy Hamilton was lifting her up, not after they had
walked her to the car.

                                       Standard of Review

Properly preserved charge
error requires reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 1981); see also Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim.
App. 1994); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)
(op. on reh=g).  In other words, a properly preserved error
will call for reversal as long as the error is not harmless.  Almanza, 686 S.W.2d at 171.  In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

                                             Discussion








Appellant contends that she
suffered harm because the jury did not have the opportunity to consider the defense
of necessity.  The State argues that the
the evidence of necessity in this case is subsumed by the evidence of
self-defense in the context of resisting arrest.  The trial court instructed the jury on
self-defense; therefore, argues the State, Appellant suffered no harm.  Thus, the key issue is whether the evidence
of necessity and self-defense overlaps to such an extent that the self-defense
instruction precluded harm from the trial court=s failure to instruct the jury on necessity.

To resolve the harm issue, we
look first to the relevant sections of the penal code.  Section 9.22 defines the defense of
necessity:

Conduct
is justified if:

 

(1)
the actor reasonably believes the conduct is immediately necessary to avoid
imminent harm;

 

(2)
the desirability and urgency of avoiding the harm clearly outweigh, according
to ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct; and

 

(3) a
legislative purpose to exclude the justification claimed for the conduct does
not otherwise plainly appear.

 

Tex. Penal Code Ann. ' 9.22
(Vernon 2003).  Likewise, section 9.31(c)
defines self-defense in the context of resisting arrest:

The
use of force to resist an arrest or search is justified:

 

(1)
if, before the actor offers any resistance, the peace officer (or person acting
at his direction) uses or attempts to use greater force than necessary to make
the arrest or search; and

 








(2)
when and to the degree the actor reasonably believes the force is immediately
necessary to protect himself against the peace officer=s (or
other person=s)
use or attempted use of greater force than necessary.

 

Tex. Penal Code Ann. ' 9.31(c)
(Vernon 2003).

Our review of the entire
record reveals that the jury could have found that Appellant acted in
self-defense if it believed that Deputy Hamilton used greater force than
necessary to arrest Appellant before Appellant offered any
resistance.  But the jury also could have
believed that Deputy Hamilton used excessive force after Appellant
offered resistanceCfor example,
the jury could have believed that Appellant first offered resistance by
attempting to return to her house, as Deputy Hamilton testified, before Deputy
Hamilton used excessive force, as Appellant testified.  The latter scenario would preclude a finding
of self-defense, but not a finding of necessity.

Stated another way, the jury
in this case was free to interpret the evidence in such a way that would
support a finding of self-defense, or a finding of necessity but not
self-defense, or a finding of neither self-defense nor necessity.  The trial court=s failure to instruct the jury on necessity precluded the middle
interpretation.  Appellant was therefore
harmed by the trial court=s failure to
instruct the jury on necessity.








                                             Conclusion

Having found harm in the
trial court=s failure to
instruct the jury on the defense of necessity, we reverse the trial court=s judgment and remand the case to the trial court for a new trial.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   HOLMAN, GARDNER, and WALKER, JJ.

 

PUBLISH

 

DELIVERED:  February 23, 2006











[1]Testimony
from law enforcement witnesses corroborated Deputy Hamilton=s
version of events, and Appellant=s family members corroborated
her version of events.