COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

JOSEPH MAURICE SUITERS, JR.,                    No. 08-11-00049-CR

§

Appellant,                                       Appeal from

§

v.                                               Criminal District Court No. 3

§

THE STATE OF TEXAS,                              of Tarrant County, Texas

§

Appellee.                                        (TC # 1220848R)

§

**O P I N I O N**

Joseph Maurice Suiters, Jr. was charged by indictment with burglary of a habitation, with

the intent to commit theft against Lance Hill.  The State sought to enhance Appellant's

punishment as a repeat offender based on a previous conviction for aggravated assault with a

deadly weapon.  Appellant pled guilty to the offense and true to the enhancement paragraph, and

the case proceeded to a jury trial on punishment.[1]  The jury found Appellant guilty of the crime

as charged, found the repeat offender notice true and sentenced Appellant to fifty years'

imprisonment in the Texas Department of Criminal Justice.  We affirm.

**BACKGROUND**

*Charged Offense - Burglary Of A Habitation*

On November 18, 2010, Appellant was charged by indictment with burglary of a

habitation, a second degree felony.  According to the indictment, on or about September 18,

---

[1]  This is one of three companion cases.  The cases were based on three different indictments for separate offenses on separate occasions.  In *Suiters v. State*, No. 08-11-00048-CR, Appellant was charged with burglary of a habitation with the intent to commit theft of Heather Brown on or about June 23, 2009.  In *Suiters v. State*, 08-11-00050-CR, Appellant was charged with aggravated robbery with a deadly weapon of Perla Esquivel.  Appellant pled guilty in all three cases and, pursuant to a plea agreement with the State, all three cases proceeded to a single, consolidated punishment trial.  The jury rendered a separate verdict and assessed a separate punishment in each case.

2009, Appellant intentionally and knowingly, and without consent, entered Lance Hill's home with the intent to commit theft. Appellant pled guilty to the offense and the case proceeded to a jury trial on punishment.

At the punishment hearing, Lance Hill testified that on September 18, 2009, he was asleep in his Fort Worth house when he heard a "loud crunch/thud" on his door. Shortly thereafter, two black males entered his bedroom. Hill made eye contact with the larger of the two men. The man then nudged his partner and the two men exited Hill's bedroom. Moments later, the two men came back into Hill's bedroom. This time, as soon as he entered the room, the smaller black male pulled out a gun and pointed it at Hill's face. At the same time, the larger black male opened the top drawer of Hill's dresser and asked him where the money was. Hill responded that there was no money, and the two men left his bedroom. Hill later discovered several items missing from his home including his wallet, cup of change, car keys, computer, cell phone, stereo, and Jeep Grand Cherokee.

The following day Appellant was pulled over for a traffic violation while driving Hill's Jeep. Officer Nathan Lehman testified that after he initiated a traffic stop, Appellant pulled into a McDonald's parking lot, exited the vehicle, and ran. Officer Lehman caught up with Appellant and took him into custody.

Detective Edward Raynsford interviewed Appellant on September 20, 2009. According to Detective Raynsford, Appellant did not take the interview seriously, wore a "smile or a smirk on his face" throughout the interview and at several points during the interview, Appellant laughed or giggled. Appellant did not admit to burglarizing Hill's home during the interview, but he matched Hill's description of the larger male who entered his home on the night in

question. Following the interview, Detective Raynsford released Appellant to other officers who booked him into jail.

Detective Raynsford and a few other officers then went to Appellant's home in an attempt to locate more evidence. Appellant's mother answered the door and signed a consent form allowing Detective Raynsford to search the home. Appellant's mother then showed the officer's to Appellant's room. Inside, Detective Raynsford found a gun matching the description Hill gave as the gun used in the burglary. The officers also found several other items belonging to Hill including his driver's license and credit card.

### The "Enhancement Offense" - Aggravated Sexual Assault

The State also sought to enhance Appellant's punishment through a prior felony conviction for aggravated sexual assault with a deadly weapon (the "enhancement offense"). The enhancement offense included as a paragraph in the indictment which stated:

> REPEAT OFFENDER NOTICE: AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF AGGRAVATED SEXUAL ASSAULT - DEADLY WEAPON, IN THE DISTRICT COURT OF TOM GREEN COUNTY, TEXAS, IN CAUSE NUMBER D-03-0358-J, ON THE 3RD DAY OF JUNE, 2004.

Appellant pled true to the enhancement offense as alleged in the notice.

At the trial, the State introduced evidence regarding the enhancement offense through the Appellant's Texas Youth Commission records and judgments; the testimony of Detective David Newsom, including his identification of several photographs taken from the crime scene of the prior offense; the testimony of BE, the victim in the prior offense; and (4) the testimony of ME, BE's mother.

Detective David Newsom was the San Angelo police officer assigned to the prior sexual assault case. He testified that on October 8, 2003, he responded to a call regarding a sexual assault of child committed by Appellant, who was also a juvenile at the time.[2] During Detective Newsom's testimony, the State sought to introduce exhibits 87-94. These exhibits were photographs taken at the scene of the crime back in 2003. At the bench, Appellant objected, "to the exhibits and also the testimony as it's going behind the facts of the case that is being used as the enhancement paragraph on all of these cases." The judge overruled Appellant's objection and the photographs were admitted into evidence. Detective Newsom went on to testify regarding the photographs. Appellant did not renew his initial objection or make any additional objections throughout the remainder of Detective Newsom's testimony.

BE, the victim of the prior sexual assault, also testified regarding the enhancement offense. According to BE, on October 8, 2003, she and Appellant rode the same bus home from school.[3] She got off the bus with the normal kids from her stop, and she started walking home. As she walked home, Appellant started talking to her. He told her it was his mother's birthday and he had hidden his mother's present underneath a board in an abandoned house just down the street, but the board was heavy, and he needed help to lift it. BE agreed to follow Appellant to the abandoned house and help him get the present.

---

[2] Detective Newsom testified that in October 2003, he was working in the Criminal Investigation Division of the San Angelo Police Department where he was assigned to the Crimes Against Children cases. According to his testimony, the police received a call regarding the offense and a patrol unit was dispatched to the victim's house where the officer took a report. In conjunction with police policy, a unidentified detective was then contacted. After realizing a child was involved, the detective contacted Detective Newsom. Detective Newsom testified that he went directly to the alleged scene of the crime.

[3] At the time of the offense, BE was thirteen years old and in the eighth grade. Appellant was in seventh grade. She testified that although she and Appellant rode the bus together, and she knew Appellant's name and where he lived, she did not know him personally.

Once inside the house, Appellant tackled BE from behind.[4]  Initially, BE was able to wiggle free.  Appellant laughed and told her he was only joking around.  BE realized she needed to get out of the situation and told Appellant she had to leave.  At that point, Appellant pulled a pair of scissors from his pocket and held them to BE's throat.  He forced her to take off her clothes, shoved her face first on to the mattress, and anally raped her.  Afterward, Appellant gripped either side of BE's neck and began twisting it as hard as he could.  According to BE, she was kicking and scratching Appellant the whole time he tried to break her neck.  Eventually, Appellant stopped strangling her, but instead of giving up, he pulled the scissors back out and started trying to stab her in the throat.  BE fought as hard as she could but Appellant managed to cut her throat a few times with the scissors.  Finally, Appellant became tired and gave up.  He told BE that he would kill her if she ever said anything, picked up his backpack, and left.

After the incident BE ran home.  Her stepfather was at the house and she immediately told him she had been raped and they needed to call the police.  Her stepfather reported the incident and also called BE's mother, ME, who was on her way home from work.  Once BE's mother got home, she took BE to the hospital where she had a full rape exam.  Also, while at the hospital, several photographs of BE's injuries were taken.

ME, BE's mother, was the final witness to testify for the State regarding the prior sexual assault--the enhancement offense.  ME essentially testified to the same facts as her daughter regarding her daughter's outcry and their visit to the hospital.  In addition, the State sought to introduce several of the photographs taken at the hospital.  The photographs depicted BE's injuries including a "scratch or cut" on BE's forehead and a "slice mark," several bruises and red marks on BE's neck.  Appellant stated "no objection" when the photographs were offered by the

---

[4]  BE testified that at the time of the incident, she was about 5'2" and 81-82 pounds, and Appellant was a couple inches taller and "considerably heavier."

State and admitted into evidence. Likewise, Appellant did not object during ME's testimony identifying and describing the images in the photographs.

### *Verdict, Sentencing, and Appeal*

In accordance with Appellant's pleas, the jury entered a finding of guilty as to the charged offense and found the prior conviction, as alleged in the enhancement paragraph, true. The jury then sentenced Appellant to fifty years' imprisonment in the Texas Department of Criminal Justice. The trial court entered judgment in accordance with the jury's verdict and ordered Appellant to serve the sentence concurrently with the sentences in the two companion cases.

On December 8, 2010, Appellant filed the instant appeal. In a single issue, Appellant argues:

> The trial court erred in overruling Appellant's objection allowing the State to prove the underlying facts of the prior conviction used to enhance Appellant's punishment. Such admission operated to deprive Appellant of Due Process of Law under the Fifth and Fourteenth Amendment[s] to the United States Constitution and [Article] 1, [Sections] 13 and 19 of the Texas Constitution.

For the reasons that follow, we affirm the trial court's judgment.

### THE ENHANCEMENT OFFENSE

On appeal, Appellant complains of the admission of evidence relating to his prior conviction for aggravated sexual assault. Essentially, Appellant complains on appeal that he was "being retried for the commission of the juvenile offense for which he had previously been convicted." Appellant's complaints can be divided into four categories. First, Appellant challenges BE's testimony: (1) "as to the facts of her being anally raped by the Appellant when she was thirteen years old"; (2) to the fact that she did not consent to the sexual activity; and (3) that Appellant "used a pair of scissors at her throat during the commission of the offense."

Second, Appellant takes issue that BE's mother's testimony "allowed the State to, in effect, introduce victim impact evidence for a crime for which the Appellant had previously been prosecuted." Third, Appellant complains that Detective David Newsom was allowed to identify State's Exhibits 87, 88, 89, 90, 91, 92, 93, and 94 "as being photographs taken in connection with his investigation of the prior conviction." The fourth and final complaint is that the prosecutor "spent the bulk of her final argument discussing, not the cases for which Appellant was being tried, but rather the case for which he had previously been convicted, served time in the Texas Youth Commission, and used as enhancement in the cases at bar."

In response, the State initially argues that Appellant waived error by failing to properly object at trial. In the alternative, the State argues that the trial court did not err in admitting the evidence because it was admissible under Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure and admission of the evidence did not violate the federal or state constitutions. Finally, the State argues that even if we find that the complaint was preserved for appeal, and even if we find evidentiary error, it was harmless because it did not affect a substantial right. As a threshold matter, we first address the State's contention that Appellant failed to properly preserve his complaints for our review.

### *Preservation of Error*

To preserve an issue for appellate review, the trial record must reflect that appellant made a timely objection stating the specific legal basis and obtained a ruling on that objection. TEX.R.APP.P. 33.1(a)(1)(A); TEX.R.EVID. 103(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex.Crim.App. 2009). Subject to two exceptions, a party must continue to object each time inadmissible evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex.Crim.App. 2003).

The two exceptions require counsel to either (1) obtain a running objection, or (2) request a hearing outside the presence of the jury. *Id*.

In addition, a point of error on appeal must present the same legal theory as was presented to the trial court through a timely, specific objection. *See Sterling v. State*, 800 S.W.2d 513, 520-21 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Coffey v. State*, 796 S.W.2d 175, 179-80 (Tex.Crim.App. 1990); *Maldonado v. State*, 902 S.W.2d 708, 711 (Tex.App.--El Paso 1995, no pet.). "An appellant who fails to preserve this parity in legal theories presents nothing on which an appellate court may act." Davila v. State, 930 S.W.2d 641, 650 (Tex.App.--El Paso, 1996 ), *citing Sterling*, 800 S.W.2d at 521. "This rule logically follows from the general rule that a party must timely present a specific objection of any error to the trial court." *Id*.

### *Application of Law to Facts*

Appellant does not specifically address preservation of error. However, Appellant's "Issue Presented" states that: "The trial court erred in ***overruling Appellant's objection*** allowing the State to prove the underlying facts of the prior conviction used to enhance Appellant's punishment." [Emphasis added].

Appellant's referenced objection was made shortly after Detective Newsom took the stand. During Detective Newsom's testimony, the State sought to introduce several photographs marked as State's Exhibits 87-94 into evidence. Counsel for Appellant objected as follows:

> Q. [BY THE STATE:] Let me show you what's been previously marked as State's Exhibit 87, State's Exhibit 88, State's Exhibit 89, State's 90, 91, 92, 93, and 94. Do State's Exhibits 87 through 94 fairly and accurately depict the scene and the items found at the scene with regard to the case involving Joseph Suiters for which you were assigned in October of 2003?
>
> A. Yes, they are.
>
> [THE STATE]: Judge, at this time, we offer State's 87 through 94 and tender to

Defense counsel for inspection.

[DEFENSE COUNSEL]: We would like to go to the bench, if we could, about that.

THE COURT: Yes.

(At the bench, on the record.)

[DEFENSE COUNSEL]: Judge, I'd like to object to the exhibits and also the testimony as it's going behind the facts of the case that is being used as the enhancement paragraph on all of these cases.

THE COURT: Okay. That objection is overruled.

[DEFENSE COUNSEL]: Thank you.

(End of bench conference.)

THE COURT: State's Exhibits 87 through 94 are admitted.

Appellant did not renew his objection at any time during Detective Newsom's testimony, nor did Appellant make a new objection, or seek to renew the objection, during the testimony of BE, ME, or the State's closing argument. Therefore, it appears Appellant is under the false impression that the aforementioned objection sufficiently preserved error as to all of his complaints on appeal. Appellant cites no legal authority supporting such a broad application of a single objection, nor have we found any. Accordingly we review the record to see whether Appellant made a sufficient objection elsewhere.

Appellant's exact argument regarding BE's testimony is unclear, but it appears he is arguing that BE's testimony constituted impermissible victim impact evidence. At trial, Appellant objected only to hearsay. Since no request, objection, or motion was made before the trial court which relates to Appellant's complaints on appeal, there is nothing preserved for our review with respect to these complaints. *See Lucio v. State*, 351 S.W.3d 878, 906-07 (Tex.Crim.App. 2011).

Similarly, with respect to ME's testimony, Appellant contends on appeal that her testimony constituted impermissible victim impact testimony. Defense counsel lodged only a single hearsay objection during ME's testimony which he immediately withdrew. He also referenced ME's testimony about the photographs of BE's injuries. Here is the colloquy:

> Q. [BY THE STATE]: [ME], I'm showing you what's been marked as State's Exhibit 95, State's Exhibit No. 96, State's Exhibit No. 97, State's Exhibit No. 98, State's Exhibit No. 99, State's Exhibit 100, and State's Exhibit 101, okay? . . . Do each of these pictures fairly and accurately depict your daughter and the injuries that were sustained at the hands of Mr. Suiters?
>
> A. [BY ME]: Yes.
>
> [THE STATE]: Your honor, at this time, the State will offer State's Exhibits No. 95 through 101.
>
> [DEFENSE COUNSEL]: They've been previously examined. No objection.
>
> THE COURT: State's Exhibits 95 through 101 are admitted.

Not only did Appellant fail to make a specific, timely request or objection during ME's testimony, counsel affirmatively stated that he had no objection. Accordingly, Appellant presents nothing for review with respect to ME's testimony or State's Exhibits 95-101.

Next we address Appellant's complaints with respect to the State's closing argument. These complaints are equally unpreserved because Appellant did not object. While his counsel objected three times during closing argument, none related to deprivation of due process, the amount of time spent or focused on the enhancement offense, or any other conceivably related topic. Because the trial objections do not comport with the complaints on appeal, error has been waived.

The final question is whether Appellant sufficiently preserved error with respect to his complaints regarding State's exhibits 87-94 and Detective Newsom's testimony. His brief does not contain a single statement comporting with his trial objection. Instead, the only assertions on

appeal are (1) certain evidence was inadmissible as a victim impact statement; (2) this evidence served to retry Appellant for an offense he had previously been convicted of; and (3) the introduction of this evidence sought to deprive Appellant of his right to a fair trial by an impartial jury in violation of his constitutional rights.

With exceptions that do not apply here, to preserve error, a party must continue to object each time the objectionable evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex.Crim.App. 2003), *citing Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998).

State's Exhibits 87-94 were identified by Detective Newsom at trial. State's Exhibits 87 and 88 were identified the photographs as a picture of the street sign on the corner next to the abandoned house where the incident took place and a picture of the outside of the abandoned home, respectively. Detective Newsom testified that State's Exhibit 89 was a photograph of "some of the junk that was in the room where the incident occurred," and State's Exhibit 90 was a photograph of what appeared to be a baby crib mattress on the floor of the same room. State's Exhibits 91 and 92 showed "the wet spot . . . and the lollipop and part of the mattress."[5] According to Detective Newsom, BE dropped the lollipop during the incident and urinated on the floor. Finally, State's Exhibits 93 and 94 were photographs of the scissors used in the assault.

At trial BE testified, without objection that: (1) she lived on Luna Street in San Angelo, Texas; (2) there was an abandoned house down the street; (3) on October 8, 2003, she went with

---

[5] Detective Newsom identified State's Exhibit 92 as a close up of State's Exhibit 91.

Appellant to the abandoned house; (4) once inside the house they went into a room with a small mattress; (5) while in that room Appellant shoved her onto the mattress and anally raped her; (6) when Appellant shoved her, she dropped a lollipop she was previously holding; (7) during or after the offense, she urinated on the floor of that room; (8) Appellant held a pair of scissors to her throat while he raped her; and (9) after the rape, Appellant used the scissors to try and stab BE in the throat and eventually discarded the scissors in the abandoned home.

A party desiring to complain about particular evidence must object each time that evidence is offered, or the objection is waived. *See Perry v. State*, 957 S.W.2d 894 (Tex.App.--Texarkana 1997, pet. ref'd). Although Appellant objected to the introduction of State's exhibits 87-94 and Detective Newsom's testimony regarding those exhibits as going behind the facts of the enhancement offense, he did not object when BE testified to essentially the same facts. *See id.* ("Although Perry objected to the admission of the calculation summary report when it was offered by the State, he did not object when the witness testified about the contents of the report. Thus, he did not preserve error.").

We overrule Appellant's issue for review and affirm the trial court's judgment.

September 26, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)