COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

RUBEN LECHUGA, JR.,                                     )

                                                                              )               No.  08-02-00181-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
346th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20020D00889)

                                                                              )

 

 

O P I N I O N

 

Ruben Lechuga, Jr. appeals his convictions for the offenses of
manslaughter and two counts of accident involving injury/death.  The jury found Appellant guilty and assessed
punishment at 7 years=
imprisonment and a $5,000 fine for the offense of manslaughter and 5 years= imprisonment for each offense of
involving injury/death.  Appellant raises
three issues on appeal:  (1) the trial
court erred in allowing inflammatory and irrelevant testimony from the decedent=s mother; (2) his trial counsel
rendered ineffective assistance of counsel; and (3) the evidence was factually
and legally insufficient to support his conviction for manslaughter.  We affirm.








On the afternoon
of May 24, 2001, grade schoolers were celebrating the
last day of the school at Grandview Park on McKinley Street by having egg and
shaving cream fights.  Eyewitnesses
testified that there were many children in the park area, with most witnesses
placing the number of children in the park and surroundings at between fifty to seventy. 
There were children running around the park and some were crossing back
and forth on the street.

Manuel Lopez was
driving west up McKinley with his wife and daughter and saw in the next block
six or seven children, ages ten to fourteen, leaving the park and crossing the
street.  They were throwing shaving cream
all over themselves and horsing around. 
A white car, later identified as being driven by Appellant, passed by
Mr. Lopez at approximately 45 or 50 miles per hour.  Mr. Lopez was driving about twenty miles per
hour when the vehicle passed him. 
Mr. Lopez observed two males in the vehicle, one driving and the
other in the passenger=s
side.  According to Mr. Lopez, the
vehicle continued to travel at the same speed as when it had passed him.  Mr. Lopez noted that the speed limit in that
area is 30 miles per hour and at the time commented to his wife that the driver
of the white car was going too fast.  Mr.
Lopez then saw the vehicle hit two children in the street and drive away real
fast.  Mr. Lopez did not see any brake
lights triggering on the vehicle.  By the
time Mr. Lopez reached the accident scene, the white vehicle had already
left.  Mr. Lopez testified that he did
not see any other vehicle on the roadway nor was there anything obstructing the
view.








Nineteen-year-old
William Lechuga testified that he was at the park
that day with a friend, having egg and shaving cream fights with other kids in
the park.  Mr. Lechuga
stated that a group of boys were crossing from one side and some others were
crossing from the other side.  He
recalled that there were five to ten children in the middle of the road.  Mr. Lechuga then
saw a white car with black stripes on the side start to speed up.  Several of the children were running out of
the way, but the vehicle kept going and hit two children.  One child was hit by the side of the car,
flew up in the air, and landed in the road. 
The other boy was hit straight on, rolled up onto the car, and went into
the windshield.  Mr. Lechuga
saw the car slow down and the boy fell off. 
The car then sped away.  According
to Mr. Lechuga, the car slowed down, but did not
stop.  To his knowledge, there were no obstructions nor any cars between the vehicle and the
kids.

Nineteen-year-old
Emanuel Medina testified that he was with William Lechuga
in the park that day, throwing eggs and having fun.  The sound of wheels peeling off drew
Mr. Medina=s
attention to the vehicle and he noticed children running out of the way.  He observed the two children in the center of
the street doing hand motions to stop, but the vehicle did not stop.  Mr. Medina turned to look at a friend and
when he looked back, he saw both children lying on the street and noticed that
the vehicle=s
windshield was shattered.  He also saw
the vehicle drive away from the scene. 
Mr. Medina did not think the driver=s
view had been obstructed in any way and he did not see the vehicle swerve away
from the children.

Nineteen-year-old
Priscilla Rodriguez went to the park that afternoon to pick up her younger
sister.  Ms. Rodriguez observed children
in the roadway and other children in the park having shaving cream fights.  Ms. Rodriguez saw the white car near the park
twice that day and at trial identified Appellant as the driver.  The first time Appellant passed by the park,
he was driving slowly.  Ms. Rodriguez
noticed that there was a boy in the passenger=s
seat.  The second time, fifteen minutes
later, Ms. Rodriguez saw Appellant driving fast and saw a lot of children in
the street.  She saw everybody scatter
and the two boys get hit by the vehicle. 
Ms. Rodriguez knew one of the boys, Abraham Rosales, and saw him hit the
windshield part of the car. 
Ms. Rodriguez observed the vehicle brake after hitting the
children, then press on the gas, and leave the scene
at a high rate of speed.








Priscilla
Rodriguez=s
seventeen-year-old sister, Veronica Rodriguez, also testified as to her
recollection of the incident.  Veronica
recalled seeing a lot of children crossing the street and a white car coming
towards them.  She could not remember if
there were any vehicles between the white car and the children on the
street.  Veronica could not see how many
people were inside the car.  Veronica
testified that she saw the car slow down a little bit and then speed up again.  Veronica then observed the car drive up
McKinley and hit the two boys.  After
hitting the boys, the vehicle drove off without stopping.

Eighteen-year-old
Victor Flores testified that on the day of the incident, he was at the park
with a couple of friends, throwing eggs and shaving cream.  Mr. Flores was walking towards the street and
had stopped on top of a mound in the park when he observed a white car coming
up the street, traveling about 35 miles per hour.  He had a clear view and observed nothing
between the car and the children in the street. 
To Mr. Flores, it sounded like the driver had sped up by pressing on the
gas.  Mr. Flores observed one of the
children, Abraham, trying to indicate to the driver, but he just got scared and
stood there in the street.  The car did not
slow down or swerve and Mr. Flores did not hear any braking before it hit the
children.  After hitting the children,
the car braked, but then it kept going and left the scene.








Fourteen-year-old
D.B. testified that at the time of the incident, she was standing in the park
and saw a crowd of kids in the street, crossing the street in both
directions.  D.B. saw a white car coming
towards the crowd, which at first was traveling slow,
then went fast, and then slowed down, turning the wheel towards the
children.  She recalled that the vehicle
was going about 30 miles per hour and that the driver hit the brakes right
before he hit the children.  D.B. saw one
of the boys hit the windshield.  The
driver then pushed the boy=s
body away and moved it to the side before leaving at a fast speed.

Nineteen-year-old
Jessica Perez testified that she was in the park that afternoon with her
friends.  Ms. Perez observed ten to
fifteen children in the street and the white car speeding towards the children.  Ms. Perez recalled that the vehicle was traveling
40 or 50 miles per hour.  She identified
Appellant as the driver and testified that she had seen Appellant driving the
car slower around the park earlier that day. 
Right before the incident, Ms. Perez saw Appellant driving up McKinley
fast, looking straight ahead.  She did
not see him slow down as he approached the children.  According to Ms. Perez, the vehicle never
stopped, but did push off Abraham Rosales=
body, which was struck in the windshield. 
Appellant then drove away, traveling at the same speed as before he had
hit the two boys.  Ms. Perez also
recalled seeing three people in Appellant=s
vehicle.

El Paso Police
Officer Bryan Marusich testified for the State as an
expert witness in the field of accident reconstruction.  Officer Marusich
stated that evidence at the scene included two sets of shoes, a glass debris
spray path from the vehicle=s
windshield, and blood at the scene.  According
to Officer Marusich, a motor vehicle versus
pedestrian accident scene reconstruction cannot be done where the person hit
bounces directly sideways off the side of the vehicle or where a person
penetrates the windshield and falls out. 
Officer Marusich could not determine with any
accuracy the actual impact site.  Based
on windshield damage, Officer Marusich estimated that
the vehicle was probably traveling 40 miles per hour.  Officer Marusich
took braking into consideration in determining his estimate.  Officer Marusich
also stated that the speed limit in the area was 30 miles per hour.  In his opinion, it would have been impossible
for the driver not to have known he was involved in some sort of accident.








With respect to
weather conditions on that day, Officer Marusich
testified that road conditions were dry and the sun would not have been a
problem for a driver=s
vision on McKinley.  In his accident
report, Officer Marusich determined that the reasons
for the accident included driver inattention, failure to yield the right-of-way
to the pedestrians, faulty evasion, and speeding.  In his opinion, driving 30 miles per hour
would be greater than is prudent and reasonable if there are fifteen or twenty
children crossing the street in front of a park.  On 

cross-examination,
Officer Marusich conceded that there was negligence
on the part of the pedestrians in the roadway, which contributed to the
incident.

Corinne Stern, the
Chief Medical Examiner for El Paso County performed the autopsy on
twelve-year-old Abraham Rosales.  Dr.
Stern determined that the cause of death was a blunt force injury to his head.  The child=s
external and internal injuries included a fractured left shin bone.  Dr. Stern testified that by measuring the
level of this fracture from the base of the heel, she can determine whether a
car was braking at the time it struck an individual in a motor vehicle/pedestrian
fatality.  The child=s fracture was measured at ten inches
from the heel, which Dr. Stern determined was lower than the height of a normal
car bumper.  In her opinion, the vehicle
that struck and killed Abraham Rosales was braking at the time that it struck
the child.








At trial, J.A.,
the twelve-year-old brother of Appellant=s
girlfriend, testified on behalf of the defense. 
J.A. recalled that on May 24, 2001, Appellant was already at his house
when he came home from school around 4 p.m. 
They played video games on J.A.=s Play Station for a while and then
left the house to pick up Appellant=s
girlfriend from Grandview Park. 
Appellant, the driver, and J.A. went to Grandview Park and parked nearby
and waited to see if they would see Appellant=s
girlfriend passing by.  J.A. observed
children around the park, throwing eggs and shaving cream at each other.  There were children flowing off into McKinley
Street and some had crossed the street to throw eggs from a farther
distance.  Appellant and J.A. went around
the park twice looking for Appellant=s
girlfriend.  When they could not find
her, they went to a friend=s
house of the girlfriend, which was located further down McKinley.  Appellant=s
girlfriend was not there, so Appellant proceeded to drive back to the
park.  J.A. recalled that as Appellant
was driving up McKinley between 25 to 30 miles per hour, a swarm of about
fifteen children ran out from the back of a van parked on the corner.  Appellant slammed on the brakes, but one of
the children hit the windshield. 
Appellant stopped for a few seconds and the child fell off the car.  Appellant then stepped on the gas and drove
away.

On
cross-examination, J.A. explained that while driving back to the park they saw
two groups of children.  Appellant slowed
down to let the first group of children pass. 
Between the first group and the second, Appellant sped up from between
20 to 30 miles per hour to between 25 to 35 miles per hour.  A minute later, the second group of children
ran out from the back of the van and Appellant hit the brakes.  J.A. guessed that the two children who
remained in the street were in shock and stayed there instead of trying to run.  After leaving the scene, they hid the car at
Appellant=s
grandmother=s house
and then walked to J.A.=s
house.

At trial,
Appellant testified that on May 24, 2001, he went to his girlfriend=s house after getting off of work in
the afternoon.  He stayed there playing
with her little brother=s
Play Station until 5 p.m.  He and J.A.
then went to the park looking for his girlfriend and parked the car
nearby.  Appellant saw the activity in
the park and noted that there were about seventy kids in the park, having
shaving cream and egg fights.  Appellant
was aware that it was the last day of school and that this activity would
probably be going on in the park.








After waiting five
minutes, Appellant started driving up McKinley and slowed down to let children
pass.  Appellant drove around the block,
looking for his girlfriend.  Appellant
then drove back up McKinley and around the block a couple of times looking for
his girlfriend, but he did not see her. 
At that point, he saw his friend Juan=s
truck and observed an egg fight between the kids in the bed of the truck and
the kids outside on the street.  When the
truck drove off, Appellant noticed that his girlfriend was in the bed of the
truck.  Appellant drove around, but lost
sight of the truck.  Appellant then drove
back to his girlfriend=s
friend=s house,
but his girlfriend was still not there. 
Appellant then proceeded back up McKinley.  Appellant was driving behind a yellow truck
with a camper on the back.  Appellant
noticed that it was going real slow, as if they were preoccupied looking for an
address or something.  Appellant passed
the vehicle on the side and then got back into his lane.

Appellant recalled
that he was traveling between 20 to 30 miles per hour as he proceeded up
McKinley.  Appellant saw a lot of
children in front of him and slowed down. 
Appellant saw a black truck coming the opposite way.  After the children moved out of the way, the
truck passed by.  Appellant recalled that
at this point, there was nothing in front of him.  All of sudden, Appellant
saw children run out into the street.  He
pressed on the brakes, but it was too late. 
One of the children flew into his windshield, breaking the glass, then
immediately falling off the car. 
Appellant stopped the car for about a second or two before fleeing the
scene.  Appellant admitted that he did
not stop and render aid and that he was aware an automobile collision could
cause death or serious bodily injury.  Appellant testified that he left because he
was scared, frightened of what might happen to him, and panicked.








On
cross-examination, Appellant conceded that in his statement to police, he did
not mention that there were children on the street the first time he passed by
nor did he mention that he went to the park to pick up his girlfriend.  Appellant further testified that the children
who ran out in front of him came from the front of a tan van parked on the
street side of the park area, referring to a photograph of the scene in State=s evidence.  Appellant conceded that he did not mention
the van in his statement.  Appellant
stated that he knew he had been involved in an accident and that he had hit
somebody who might possibly be injured, but he did not stop to render aid.

The State called
Dolores Luna, the grandmother of the surviving child victim, to testify as a
rebuttal witness.  Ms. Luna lives with
her husband, their daughters, and their grandchildren on McKinley.  Ms. Luna and her husband were not at home at
the time of the accident.  She received a
cell phone call from the victim=s
aunt, informing her that her grandchild had been injured.  When Ms. Luna and her husband arrived at the
scene, the police were starting to block the intersections, but they had leeway
to get to their home.  Instead of parking
in their driveway, her husband parked the van in front of their house.  After viewing the same photograph of the
scene referred to by Appellant, Ms. Luna testified that the van parked on
McKinley was their van, which had arrived at the scene after the accident
occurred.

Inflammatory
Testimony








In Issue One,
Appellant asserts that the trial court erred in allowing  inflammatory and irrelevant testimony
from Elva Olivia Saenz, the mother of the decedent, arguing that her testimony
was prejudicial and contained little probative value.  In his brief, Appellant complains that Ms.
Saenz=
testimony was inadmissible under Rule 403 of the Texas Rules of Evidence, however, the record shows that Appellant did not
make a Rule 403 objection to her testimony. 
To preserve an issue for appeal, there must be a timely objection that
specifically states the legal basis for the objection.  Maldonado v. State,
902 S.W.2d 708, 711 (Tex.App.--El Paso 1995, no
pet.); Rezac v. State, 782 S.W.2d 869,
870 (Tex.Crim.App. 1990).  Appellant=s
complaint on appeal fails to comport with his trial objections, therefore we
find he has waived this issue for review. 
See Tex.R.App.P.
33.1(a).  Issue
One is overruled.

Ineffective
Assistance of Counsel

In Issue Two,
Appellant asserts that he was denied effective assistance of trial counsel,
alleging four instances of counsel=s
deficient conduct by:  (1) failing to
investigate or object to the admission of the videotape of the accident scene
and recovery of Appellant=s
vehicle; (2) entering into a stipulation that Appellant did not have a driver=s license at the time of the incident;
(3) eliciting an admission from Appellant during direct examination that he did
not stop and render aid; and (4) failing to seek a jury charge on the
lesser-included offense of criminally negligent homicide.








We review claims
of ineffective assistance of counsel under the two-prong test set out by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by
Texas in Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App.
1986).  To prevail, the appellant must
show that trial counsel=s
performance was deficient, that is, counsel=s
representation fell below an objective standard of reasonableness.  Thompson v. State, 9
S.W.3d 808, 812 (Tex.Crim.App. 1999); Strickland,
466 U.S. at 687-88, 104 S.Ct. at 2064.  The appellant must also show that counsel=s deficient performance prejudiced his
defense.  Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Jackson v.
State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  This requires the appellant to show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S.Ct. at 2068; Jackson, 877 S.W.2d at 771.  A
reasonable probability is a probability sufficient to undermine confidence in
the outcome. Strickland, 466 U.S. at 694, 104 S.Ct.
at 2068; Jackson, 877 S.W.2d at 771.

In reviewing an
ineffective assistance of counsel claim, we must indulge a strong presumption
that counsel=s conduct
falls within the wide range of reasonable professional assistance and the
appellant must overcome the presumption that the challenged conduct might be
considered sound trial strategy.  Thompson, 9 S.W.3d at 813; Strickland, 466 U.S. at
689, 104 S.Ct. at 2065.  Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this
presumption.  Thompson, 9 S.W.3d
at 813; see Jackson, 877 S.W.2d at 771.  In the majority of instances, this task is
extremely difficult because Athe
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.@  Thompson, 9 S.W.3d
at 813-14.  When faced with a
silent record as to counsel=s
strategy, this Court will not speculate as to the reasons for counsel=s actions.  See Jackson, 877
S.W.2d at 771.  It is the
defendant=s burden
to prove ineffective assistance of counsel by a preponderance of the
evidence.  Thompson, 9 S.W.3d at 813.  In
this case, Appellant did not file a motion for new trial to challenge the
alleged ineffectiveness of his counsel. 
The record before this Court does not contain trial counsel=s explanations of the reasons for the
inaction alleged as error, therefore it will be difficult for Appellant to
rebut the strong presumption that trial counsel=s
conduct falls within the wide range of reasonable professional assistance.  See Thompson, 9
S.W.3d at 814.








Appellant first
asserts that his trial counsel was ineffective for failing to preview a police
videotape of the accident scene on McKinley and the recovery of Appellant=s vehicle prior to its showing to the
jury and for failing to object to this evidence.[1]  Earlier in the trial, the State had
introduced fourteen still photographs of the accident scene on McKinley, which
Appellant=s counsel
said he had previously viewed.  These
photographs were admitted without objection. 
The State had already offered the testimony of El Paso Police Officers
Aaron Curlee and Eduardo Lopez, who described their
recovery of Appellant=s
vehicle, including their observations of the damaged condition of the vehicle,
blood on the hood by the driver=s
side, materials covering the vehicle, and the vehicle=s
location on the property where it was found. 
After the police videotape was shown to the jury, the State offered the
testimony of El Paso Police Officer Thomas Garcia who testified that he was
aware of the video taken in this case and stated that it was taken before he
took photographs of the vehicle.  Through
Officer Garcia=s
testimony, the State introduced eight still photographs that depicted Appellant=s vehicle as it was found by the
police.  Appellant=s
counsel stated that he had previously viewed the photographs and had no
objection.  These photographs were then
admitted into evidence.  The record on
this appeal does not reveal trial counsel=s
reasoning for his conduct with respect to the videotape.  Appellant=s
allegation is not affirmatively supported by the record, therefore he has
failed to overcome the strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance.  See Jackson, 877
S.W.2d at 771.  Moreover,
Appellant has failed to establish how this alleged deficiency prejudiced the
defense as similar evidence was admitted at trial.  See Strickland, 466 U.S. at 687, 104 S.Ct at 2064.








Appellant also
complains that his trial counsel was ineffective for entering into a
stipulation that Appellant did not have a valid driver=s
license on May 24, 2001.  Appellant
argues that this stipulation amounted to an agreement as to a major element of
the manslaughter charge alleged in the indictment.  However, the record shows that the indictment
did not allege that Appellant did not have a valid driver=s license.  Rather, the State was required to prove one
of three alleged theories of recklessness, which included an allegation that
Appellant was Adriving
said motor vehicle on a public roadway without the knowledge and skill required
to obtain a valid Texas Driver=s
license and driving in a public roadway where the then existing conditions were
such that the knowledge and skill required to obtain a Texas Driver=s License was necessary to operate such
motor vehicle safely . . . .@  The record is silent as to trial counsel=s reasoning for entering into the
stipulation, which was signed by all parties, including Appellant.  We also note that Appellant later admitted
during trial that he did not possess a valid driver=s
license on May 24, 2001.  Appellant has failed to overcome the presumption of reasonable professional
assistance nor has he shown that he was prejudiced by trial counsel=s alleged deficient conduct with
respect to the stipulation.








Appellant next
asserts that his trial counsel was ineffective for eliciting his admission to
the offenses of failure to stop and render aid during direct examination at the
guilt-innocence phase of his trial. 
Prior to Appellant=s
testimony, several State witnesses all testified that Appellant=s vehicle hit two children on McKinley
and then fled the scene without providing assistance.  Appellant=s
girlfriend testified that Appellant told her he left the scene because he was
scared.  Defense witness J.A., the
passenger in Appellant=s
vehicle, testified that Appellant fled the scene after hitting the children.  The record before this Court does not reflect
trial counsel=s reasons
or strategy regarding the alleged deficient conduct.  Absence such evidence, Appellant has failed
to overcome the presumption that trial counsel=s
actions were sound trial strategy, particularly given the uncontradicted
evidence of Appellant=s
flight from the accident scene.  With
respect to this complaint, Appellant has failed to show trial counsel rendered
ineffective assistance.

In Appellant=s final complaint, he contends that
trial counsel failed to seek a charge on the lesser-included offense of
criminally negligent homicide.  Appellant=s argument, however, is without merit
as this lesser-included offense was submitted to the jury.  Having reviewed Appellant=s complaints within his ineffective
assistance claim, we find that he has failed to demonstrate that trial counsel=s performance was deficient or that any
alleged deficiency prejudiced the defense. 
Issue Two is overruled.

Sufficiency
of the Evidence

In Issue Three,
Appellant argues that his conviction for manslaughter was based on legally and
factually insufficient evidence. 
Specifically, Appellant asserts that the State failed to prove he acted
recklessly.

Standards
of Review








When reviewing the
legal sufficiency of the evidence, we review the evidence in the light most
favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2788-89, 61 L.Ed.2d 560 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex.Crim.App. 2001). 
We do not resolve any conflict of fact, weigh any evidence, nor do we
evaluate the credibility of any witnesses, as this was the function of the trier of fact.  See
Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992).  Our duty, rather, is to determine if the
explicit and implicit findings of the jury are rational by reviewing all the
evidence is the light most favorable to the verdict.  Adelman, 828 S.W.2d at 421-22. 
In so doing, we resolve any inconsistencies in the evidence in favor of
the verdict.  Matson
v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991).

In reviewing the
factual sufficiency of the evidence, we ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of
guilt is either so obviously weak as to undermine confidence in the jury=s determination or, although adequate
if taken alone, is greatly outweighed by contrary proof.  King v. State, 29
S.W.3d 556, 563 (Tex.Crim.App. 2000); Johnson v.
State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).  We examine the evidence that tends to prove
an elemental fact in dispute and compare it with the evidence that tends to
disprove that fact.  Jones v. State,
944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d
54 (1997).  Our review must employ
appropriate deference and should not intrude upon the fact finder=s role as the sole judge of the weight
and credibility given to any evidence presented at trial.  See Johnson, 23
S.W.3d at 7.  We will set aside a
verdict for factual insufficiency only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  Wesbrook v. State, 29 S.W.3d 103, 112 (Tex.Crim.App.
2000).

Manslaughter








A person commits
manslaughter if he recklessly causes the death on an individual.  Tex.Pen.Code
Ann. ' 19.04(a)(Vernon 2003).  A
person acts recklessly or is reckless with respect to circumstances surrounding
his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  Tex.Pen.Code Ann. '
6.03(c)(Vernon 2003). 
The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor=s standpoint.  Id. 
AAt the
heart of reckless conduct is conscious disregard of the risk created by the
actor=s
conduct.@  Trepanier
v. State, 940 S.W.2d 827, 829 (Tex.App.‑‑Austin
1997, pet. ref=d),  quoting, Lewis
v. State, 529 S.W.2d 550, 553 (Tex.Crim.App.
1975).








Viewing the
evidence in the light most favorable to the verdict, the evidence in this case
shows that Appellant was driving on McKinley towards the park going over the 30
miles per hour speed limit for the area and according to witnesses, he was
driving fast.  Appellant passed another
vehicle, which he believed was traveling too slow.  Without swerving or braking, Appellant drove
towards a group of children in the middle of the street and struck two of the
children who remained in the roadway. 
One of the victims, Abraham Rosales, hit the windshield of Appellant=s vehicle with enough force to break
through the glass.  He died several days
later from injuries sustained in the accident. 
Witnesses testified that there was nothing between Appellant and the
children that would have obstructed Appellant=s
view of the children in the street.  At
trial, Appellant testified that he was aware of the activity at the park that
day and that there were many children running around the park area.  From evidence of Appellant=s conduct and his testimony, the jury
could rationally conclude beyond a reasonable doubt that given the
circumstances surrounding his conduct, Appellant was reckless in driving in excess
of the posted speed limit and at a speed that was greater than reasonable and
prudent, a risk that Appellant consciously disregarded when he sped up to pass
another vehicle, and then drove straight towards the children up ahead on the
street.  Therefore, we conclude the
evidence is legally sufficient to support Appellant=s
conviction for manslaughter.

Appellant also
argues that the evidence was factually insufficient to support the manslaughter
conviction.  Specifically, Appellant
points to evidence at trial that the children ran out in front of his car, that
he braked before hitting the children, and that a van was obstructing his
view.  Several witnesses, however,
offered contradictory testimony, stating that Appellant was speeding, did not brake before hitting the children, and did not have an
obstructed view.  While Dr. Stern
testified that she determined from the victim=s
injuries that the vehicle was braking, Officer Marisuch also testified that his estimation that Appellant
was driving approximately 40 miles per hour at the time of collision took
braking into consideration.  The jury, as
fact finder, was free to believe or disbelieve testimony offered by Appellant
and defense witness J.A., the passenger in Appellant=s
vehicle, and to resolve any inconsistencies in favor of the prosecution.  After reviewing all the evidence presented at
trial, we conclude the jury=s
finding was not so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  Issue Three is overruled.

We affirm the
trial court=s
judgment.

 

 

 

October
16, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]Although
the police videotape was shown to the jury, it was never formally offered or
admitted into evidence as an exhibit, therefore it is not in the record before
this Court.