**Opinion issued March 31, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-20-00308-CR

———————————

**JEREMIAH NAVARRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 207th District Court**
**Comal County, Texas\***
**Trial Court Case No. CR2014-389**

---

# O P I N I O N

A jury found Jeremiah Navarro guilty of two offenses: assault of a public

---

\* Per the Texas Supreme Court's docket-equalization powers, this appeal was transferred from the Third Court of Appeals to this court on April 9, 2020. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 20-9048 (Tex. Mar. 31, 2020). We are unaware of any relevant conflict between the Third Court's precedent and ours. *See* TEX. R. APP. P. 41.3.

servant and aggravated assault with a deadly weapon against a public servant. On appeal, Navarro contends that we must reverse the former of his two judgments of conviction because the trial court erred in failing to instruct the jury on the defense of necessity and gave the jury an erroneous self-defense instruction.

We affirm.

## BACKGROUND

### Charges

In a three-count indictment, a grand jury indicted Navarro for offenses arising out of an altercation that ensued when B. Turner and L. Braan, two peace officers employed by the New Braunfels Police Department, tried to detain or arrest him. In Count I, the grand jury indicted Navarro for aggravated assault with a deadly weapon against a public servant for striking Turner with a trophy and trying to strike him with a screwdriver. *See* TEX. PENAL CODE § 22.02(b)(2)(B). In Count II, the grand jury indicted Navarro for aggravated assault with a deadly weapon against a public servant for trying to strike Braan with the screwdriver. *See id.* In Count III, the grand jury indicted Navarro for assault of a public servant by biting Turner. *See id.* § 22.01(b)(1). In a separate indictment, a grand jury indicted Navarro for attempted arson of the building where the altercation took place. *See id.* § 28.02(a)(2).

### Trial

Navarro pleaded not guilty to all the charged offenses, which were then tried

2

to a jury. At trial, four witnesses testified. The State called Officers Turner and Braan. The defense called D. Palmer, a forensic scientist employed by the Texas Department of Public Safety. Finally, Navarro testified in his own defense.

### *Turner's Testimony*

Turner testified that he and his partner, Braan, were dispatched to respond to a 911 hang-up at a local business, A-1 Upholstery. When Turner arrived, several car radios were on with their volume at "full blast."

A woman, who turned out to be Navarro's mother, approached Turner outside the business soon after his arrival. Navarro's mother was upset, and her neck and chest were covered in a pink or red substance.

Navarro then appeared outside and began yelling that his mother was "a black widow or the black widow" and a "drug dealer" who had to be arrested. When Turner tried to talk to Navarro, Navarro retreated inside.

Turner entered the business, which was in disarray. The pink or red substance, which Turner now recognized as transmission fluid, was "all over," including the floor. Navarro had retreated into a small office, seating himself near a desk.

Turner tried to persuade Navarro to come back outside and speak with him. Navarro refused. Instead, Navarro got a towel and tried to set it afire with a lighter. When the towel did not ignite, he rubbed it in the transmission fluid on the floor and successfully set it on fire. Navarro said everybody in the building was going to burn.

By this point, Braan, who drove a separate patrol vehicle, had arrived. Braan knocked the flaming towel out of Navarro's hand with a steel baton and put out the flaming towel by stomping on it. Turner then used his taser on Navarro, but this did not affect Navarro. Navarro taunted Turner, urging Turner to try to tase him again.

Navarro took refuge under the desk, where he tried to set the transmission-fluid-covered floor ablaze. But he was unable to get his lighter to light. While Navarro was trying to do so, he told the officers that he was going to light the place on fire and kill everyone. Turner tried to subdue Navarro with the taser a second time by holding it directly against Navarro's body, performing a so-called "dry stun." But Turner's second use of the taser was no more effective than the first.

Turner and Braan tried to pull Navarro out from under the desk. But they were unable to do so. So, the officers flipped the desk over in an attempt to get at him. But when they did this, Navarro grabbed and rode "the desk to his feet."

Turner tackled Navarro to the floor. When Turner did so, Navarro grabbed a trophy and struck Turner's head. As the two struggled on the floor, Navarro grabbed a screwdriver and tried to stab him. Turner stopped Navarro by restraining his arm. As the struggle between the two continued, Navarro then bit Turner in the arm.

To prevent Navarro from continuing to bite Turner, Braan hit Navarro in the face several times. These blows eventually dazed Navarro, who then stopped biting

Turner and let go of the screwdriver. Now that Navarro was subdued, Turner secured Navarro's hands and handcuffed him.

The altercation between the officers and Navarro lasted about eight-and-a-half minutes. Turner testified that he and Braan were entitled to use deadly force when Navarro set the towel alight, but they wanted to exhaust every nonlethal method of subduing Navarro before resorting to deadly force.

Turner concluded that Navarro was intoxicated by some substance when the altercation took place. But no tests were performed to confirm this conclusion.

Turner testified that the trophy-blow to his head caused him pain but did not draw blood. The bite drew blood and resulted in the loss of a "chunk" of Turner's flesh. The wound required hospital treatment that night, and Turner had to wash the wound with an antibiotic soap for weeks.

Turner agreed that Navarro was severely injured in the altercation.

### Braan's Testimony

Braan testified that he arrived at A-1 Upholstery after Turner. When Braan arrived, he saw Navarro's mother. Her hair and shirt were saturated with a red substance, which Braan initially mistook for blood.

Once Braan had spoken with Navarro's mother, he went inside. Like Turner, Braan noticed that the red substance was "poured all over the place" inside the

5

building. Turner was standing in an office doorway, and when Braan joined him, Braan saw Navarro trying to light a towel on fire.

According to Braan, Navarro ignited the towel after wiping it on the floor, and he then began walking toward them. Braan knocked the towel out of his hand and extinguished the fire by stepping on the towel. Turner tased Navarro at this point.

Navarro lunged at both officers, and Braan responded by striking Navarro with his baton. Navarro backed up, and the officers then entered the office to handcuff him. But all three fell to the floor after slipping in transmission fluid. While on the floor, Braan and Turner tried to handcuff Navarro, who physically resisted their effort to restrain him by trying to strike and kick the officers.

Navarro eventually retreated underneath the desk and tried to ignite the transmission fluid on the floor. Braan and Turner responded by flipping the desk over, after which Navarro regained his feet. Navarro had a trophy in one hand and swung it at both officers. Braan got out of the way, but the trophy struck Turner in the face.

During the ensuing struggle, Navarro and the officers ended up on the floor again after they tackled him. Turner got a handcuff on one of Navarro's wrists but not on the other one. Navarro grabbed a screwdriver and swung it towards the officers, but Braan and Turner grabbed Navarro's arm, at which point Navarro bit Turner in the arm and kept biting him.

Braan punched Navarro until Navarro stopped biting Turner and dropped the screwdriver. After that, the officers put Navarro in handcuffs.

According to Braan, Navarro resisted from the beginning of the encounter until its end, despite the officers' instructions to stop resisting. Navarro said that he was going to "burn up" everyone throughout the altercation.

Braan, Turner, and Navarro were all treated at the hospital that night. Navarro hyperextended one of Braan's knees with a kick, and Braan's knee remained swollen and painful for a few weeks.

Before becoming a peace officer, Braan had worked as a firefighter. On cross-examination, Braan agreed that transmission fluid is designed to resist heat, has a high flashpoint, and is not an ideal accelerant.

### Palmer's Testimony

Palmer is a forensic scientist with the Department of Public Safety. She forensically examined the trophy, testing bloodstains on it to see if Turner's, Braan's, or Navarro's DNA was present. Neither of the officers' DNA was on the trophy. But she conceded that her analysis was confined to bloodstains and did not include other types of evidence that could yield DNA, like saliva or skin cells. She further conceded that she tested just three of fourteen bloodstains. And she also conceded that she could not say whether Turner was struck by the trophy or not.

*Navarro's Testimony*

During direct examination, Navarro acknowledged he has a criminal history that includes several convictions. His convictions include:

- a 2002 conviction for resisting arrest;

- 2004 convictions for evading arrest, assault, and terroristic threat;

- 2006 convictions for aggravated assault, burglary of a habitation, evading arrest, violation of a protective order, and criminal mischief;

- a 2012 conviction for criminal mischief;

- 2014 convictions for possession of synthetic marijuana and driving with an invalid license; and

- 2015 convictions for driving while intoxicated and driving with an invalid license.

But this was the first time Navarro had insisted on a trial.

According to Navarro, he had only been at A-1 Upholstery for about five minutes before the police arrived. The transmission fluid was already spilled all over the building when he showed up to the business that night. Likewise, his mother already was covered in the fluid when he arrived.

Navarro testified that he and his mother had been arguing because she was divorcing his father. Navarro placed more of the blame for the divorce on her.

Navarro acknowledged having turned on one vehicle's radio.

Turner arrived first. When Navarro first saw Turner, Turner already had his handcuffs out and one hand on either his pistol or his taser. So Navarro immediately

8

backed up and went into the office. Turner followed Navarro and asked Navarro to step out. Navarro refused. Instead, Navarro sat down and lit a cigarette. Turner told Navarro to put out the cigarette, which Navarro refused to do. Navarro agreed that Turner gave him commands, which Navarro ignored or disobeyed.

Braan arrived at A-1 Upholstery right around this time.

Turner then entered the office, grabbed Navarro's arm, and tried to pull him outside. But they slipped and fell to the floor due to the transmission fluid, and "that's when everything became crazy." Navarro denied resisting Turner and attributed the fall solely to the fluid. Navarro thought Turner was going to shoot him, and said something like, "I don't want to die."

Once on the floor, Navarro conceded that he still did not comply with Turner's orders. At this point, Turner tasered him. While the struggle continued on the floor, Turner handcuffed one of Navarro's wrists, but Navarro continued to resist so that Turner was unable to handcuff the other.

Navarro denied igniting the towel. He denied trying to burn down the building or threatening to do so. He knew the substance on the floor was transmission fluid, which would not burn. He explained that his statements about fire were an attempt to persuade Turner to stop tasering him by suggesting the taser could cause a fire.

Navarro denied that he lunged at either of the officers. He likewise denied approaching either of them in an aggressive manner.

9

Navarro denied picking up the trophy or the screwdriver. He also denied threatening either officer with these objects.

Navarro admitted biting Turner's arm. But Navarro testified that he did so because he was afraid he was going to lose the ability to breathe. Navarro explained that Turner was on top of him and he "was having a hard time breathing" and "was losing the ability to breathe." Navarro described biting Tuner as "the only thing" he could do under the circumstances and a "desperate move." But Navarro denied that Braan had to punch him to get him to stop biting Turner.

Navarro denied having used drugs the night of the altercation.

Navarro was taken to the hospital after the altercation. His injuries included a broken nose, a fractured wrist, and bruises on his legs.

### *Jury Verdicts*

With respect to Count I, the jury acquitted Navarro of aggravated assault with a deadly weapon against a public servant for striking Turner with the trophy, but it found Navarro guilty of aggravated assault with a deadly weapon against a public servant for trying to strike Turner with the screwdriver. With respect to Count II, the jury acquitted Navarro of aggravated assault with a deadly weapon against a public servant for trying to strike Braan with the screwdriver. With respect to Count III, the jury found Navarro guilty of assault of a public servant by biting Turner. Finally, the

10

jury acquitted Navarro of the separately charged offense of attempted arson of the building where the altercation occurred.

### *Judgments and Punishments*

The trial court entered judgments of acquittal and conviction corresponding to the jury's verdicts. The trial court assessed Navarro's punishment at 30 years of imprisonment for the aggravated assault by trying to strike Turner with the screwdriver and 20 years of imprisonment for the assault by biting Turner. In the judgments, the trial court provided that both sentences are to run concurrently.

## DISCUSSION

In two issues, Navarro contends the trial court erred in the way it instructed the jury as to Count III, the count in which the State alleged that he assaulted Turner by biting him. First, Navarro contends the trial court erred in refusing a requested instruction on the defense of necessity. Second, he contends the trial court's self-defense instruction was erroneous. Navarro does not, however, challenge his conviction in connection with Count I, the count in which the State alleged in part that he committed aggravated assault by trying to strike Turner with a screwdriver.

## I. Necessity

Navarro contends the trial court erred in refusing to instruct the jury on the defense of necessity with respect to Count III, the count in which the State alleged

11

that he assaulted Turner by biting him. Navarro does not contend that he was entitled to a necessity instruction with respect to any of the other charged offenses.

### A. Standard of review

Necessity is a defense of justification. PENAL §§ 9.02, 9.22; *see Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (so describing necessity).

A trial court must submit a jury charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. But the trial court has no duty to submit an unrequested defensive issue on its own motion, even when the evidence raises the defensive issue, because unrequested defensive issues are not law applicable to the case. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). Necessity is such a defensive issue because necessity is a defense to prosecution. PENAL §§ 9.02, 9.22; *see Taylor v. State*, 332 S.W.3d 483, 487 (Tex. Crim. App. 2011) (noting that mistake-of-fact is defensive issue because it constitutes defense to prosecution); *Hartis v. State*, No. 14-11-00882-CR, 2012 WL 359282, at *2–3 (Tex. App.— Houston [14th Dist.] Feb. 2, 2012, pet. ref'd) (mem. op., not designated for publication) (necessity is defensive issue and trial court therefore is not obligated to instruct jury on defense of necessity absent request for instruction by defendant).

Thus, a defendant must preserve error with respect to defensive issues, like necessity, by requesting an instruction or objecting to its omission; otherwise, he cannot complain on appeal about the trial court's failure to include the instruction.

*Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant's request or objection preserves error so long as it conveys the substance of his complaint to the trial court well enough to put the court on notice of the omission or error in the charge. *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007); *see also Williams v. State*, No. PD-0477-19, 2021 WL 2132167, at *6 (Tex. Crim. App. May 26, 2021) (stating error is preserved as to requested instruction that is omitted from charge if grounds for request are apparent to trial court and opposing counsel).

If the defendant preserved his complaint about the omission of a defensive issue from the jury charge, we must decide whether the trial court erred in refusing to include the requested instruction. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007) (articulating standard of review for evaluating whether trial court erred in refusing instruction on defensive issue). A trial court errs as a matter of law in refusing to include a requested instruction on a defensive issue when the evidence admitted at trial raises the defense, thereby entitling the defendant to the requested instruction. *See* PENAL § 2.03(c) (trial court is not to submit defensive issue to jury unless evidence is admitted supporting defense); *Shaw*, 243 S.W.3d at 657–58 (defendant entitled to instruction on defensive issue if the record contains some evidence, from any source, on each element of defense that, if credited by jury, would support rational inference that these elements are true).

Even when the trial court errs by refusing a requested instruction on a defensive issue, the error is not reversible unless it caused some harm. *See Trevino v. State*, 100 S.W.3d 232, 241–43 (Tex. Crim. App. 2003) (per curiam) (evaluating whether defendant suffered some harm from omission of requested instruction on sudden passion, which is defensive issue in punishment phase of trial); *see also Carmen v. State*, 276 S.W.3d 538, 546–47 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (reviewing record for "any actual harm" after holding trial court erred in refusing requested defensive instruction on use of deadly force in self-defense).

## B.  Applicable law

The defense of necessity is set out in Section 9.22 of the Penal Code, which provides that conduct that otherwise would be criminal is justified if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

PENAL § 9.22. The first two elements are for the jury to decide, while the third is a question of law for the court. *Rodriguez v. State*, 524 S.W.3d 389, 393 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Under Section 9.22's plain language, the defense of necessity may apply to any offense unless the Legislature has specifically excluded the defense. *Bowen v.*

14

*State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005). The Legislature has not excluded the defense of necessity with respect to assault or aggravated assault. *See Juarez v. State*, 308 S.W.3d 398, 400–06 (Tex. Crim. App. 2010) (trial court erred in refusing to instruct jury on necessity in prosecution for aggravated assault against peace officer); *Williams v. State*, 630 S.W.2d 640, 642–43 (Tex. Crim. App. 1982) (trial court erred in refusing to instruct jury on necessity in prosecution for assault).

Necessity is a defense of confession and avoidance and thus requires a defendant to admit his otherwise criminal conduct. *Maciel v. State*, 631 S.W.3d 720, 723 (Tex. Crim. App. 2021). To be entitled to an instruction on necessity, the defendant must adduce evidence that essentially admits to every element of the charged offense. *Id.* He cannot simultaneously deny that he committed the charged offense and assert that his commission of the offense was necessary. *Id.*

But even if the defendant admits he committed the charged offense, he is not entitled to an instruction on the defense of necessity if it is undisputed that he provoked the difficulty that made it necessary for him to commit the offense. *McFarland v. State*, 784 S.W.2d 52, 54 (Tex. App.—Houston [1st Dist.] 1990, no pet.). In other words, the defendant cannot claim it was necessary for him to commit

15

the charged offense if he was responsible for having placed himself in the position from which he attempted to extricate himself by committing the offense. *Id.*[1]

---

[1] We acknowledge there is an unresolved split of authority among the courts of appeals on this issue. The First, Second, Thirteenth, and Fourteenth Courts have held that a necessity defense is not available when the defendant is responsible for the predicament ostensibly requiring him to commit the charged offense. *Ford v. State*, 112 S.W.3d 788, 794 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Miller v. State*, 940 S.W.2d 810, 815 (Tex. App.—Fort Worth 1997, pet. ref'd); *Shafer v. State*, 919 S.W.2d 885, 887 (Tex. App.—Fort Worth 1996, pet. ref'd); *McFarland*, 784 S.W.2d at 54; *Goodin v. State*, 750 S.W.2d 857, 862 (Tex. App.—Corpus Christi 1988, pet. ref'd); *Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.). In addition, the Fourth and Eleventh Courts have applied the same rule in nonprecedential decisions. *Morrow v. State*, No. 11-13-00326-CR, 2015 WL 5192291, at *2 (Tex. App.—Eastland Aug. 21, 2015, no pet.) (mem. op., not designated for publication); *Rangel v. State*, Nos. 04-01-00451–53-CR, 2002 WL 1625576, at *4 (Tex. App.—San Antonio July 24, 2002, no pet.) (not designated for publication). At least two courts—the Fourth and Eighth—have applied the rule, or something very like it, in precedential decisions in one particular context: situations where a defendant unlawfully tries to avoid detention or arrest. *In re P.E.C.*, 211 S.W.3d 368, 373 (Tex. App.—San Antonio 2006, no pet.); *Maldonado v. State*, 902 S.W.2d 708, 711–12 (Tex. App.—El Paso 1995, no pet.). In contrast, the Fifth and Tenth Courts have held that provoking the difficulty does not negate a necessity defense. *Ray v. State*, 419 S.W.3d 467, 468–69 (Tex. App.—Waco 2013, pet. ref'd); *Thomas v. State*, 662 S.W.2d 677, 679 (Tex. App.—Dallas 1983), *judg't aff'd on other grounds*, 678 S.W.2d 82 (Tex. Crim. App. 1984). In this appeal, which was transferred to us from the Third Court, we must decide the case under the Third Court's precedent to the extent that it conflicts with our own. TEX. R. APP. P. 41.3. But the Third Court has not decided this issue. *See Madugba v. State*, No. 03-11-00626-CR, 2013 WL 5854430, at *3 n.4 (Tex. App.—Austin Oct. 16, 2013, pet. ref'd) (mem. op., not designated for publication) (noting decisions holding that provoking the difficulty renders necessity defense unavailable but declining to address this issue on facts of case). Because the Third Court has not decided whether provoking the difficulty negates a necessity defense, we apply our own precedential decision in *McFarland*, which is consistent with the weight of authority. *See Padilla v. State*, 278 S.W.3d 98, 102 n.2 (Tex. App.—Texarkana 2009, pet. ref'd) (court relied in part on its own precedent, which was reinforced by later decisions of other courts, in case transferred to it from transferor court that had not decided issue).

### C.    Analysis

### 1.    Error preservation

The State argues that Navarro did not preserve for review whether he was entitled to a defensive instruction on necessity. The State maintains that Navarro's objection was insufficient because it was not specific enough to preserve error and because his proposed necessity instruction was not made in writing or dictated to the court reporter. On this record, we disagree that Navarro did not preserve error.

At the end of the first day of trial, in a colloquy between the court and counsel, defense counsel indicated he might request a necessity instruction as to Navarro's biting of Turner. At the beginning of the second day, the court acknowledged that defense counsel had provided draft language on the necessity defense. But this draft language is not in the record. Finally, later during the second day of trial, before the court read the charge to the jury, the court asked if the parties had any objections to the court's charge. Defense counsel replied: "I'll just renew my objection as to the necessity defense. We had requested that be put into the charge and the Court denied that request. We'll renew our objection as to that." The trial court overruled the objection.

Like the draft language that defense counsel provided to the trial court, the initial conference about the charge when the trial court first denied the defense's request is not in the record. Nonetheless, the record makes clear that defense counsel

17

requested a necessity instruction as to Navarro's biting of Turner, and it is equally clear that both the trial court and the State understood defense counsel's renewed objection to the omission of this necessity instruction from the court's charge.

An objection preserves error if it conveys the substance of the complaint to the trial court well enough to put the court on notice of the omission or error in the charge. *Bennett*, 235 S.W.3d at 243. Navarro's objection was specific enough to inform the trial court about the exact nature of the defense's complaint under the circumstances, which included repeated discussion of the necessity instruction and Navarro's testimony that he bit Turner because he was having difficulty breathing. Thus, defense counsel's objection to the omission of the necessity instruction was sufficient to preserve error when considered in context. *See* TEX. R. APP. P. 33.1(a)(1)(A) (to preserve error, objection must be sufficiently specific to make trial court aware of complaint, unless specific grounds are apparent from context); *see also Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (stating that objection need only be clear enough to give trial judge and opposing counsel chance to address and, if necessary, correct ostensible error and that reviewing court must consider objection in context in which complaint was made and in light of parties' shared understanding at time complaint was made).

## 2. Provoking the difficulty

In his testimony, Navarro admitted that he intentionally bit Turner in the arm. But Navarro stated he thought he had no other choice but to do so because Turner was on top of him, and Navarro was losing the ability to breathe in consequence. Under these circumstances, Navarro maintains he was entitled to have the jury instructed on the defense of necessity. *See* PENAL §§ 9.02, 9.22; *Juarez*, 308 S.W.3d at 400–06 (defendant was entitled to necessity instruction based on his testimony that he bit officer who was on top of him because this obstructed his breathing).

The State argues that Navarro nonetheless was not entitled to a necessity instruction because it is undisputed that Navarro provoked the altercation that led to him biting Turner. The State maintains that when, as here, a defendant puts himself in the position from which he tried to extricate himself by committing the charged offense, a necessity defense is barred. On this record, we agree with the State.

According to Navarro, Turner had his handcuffs out from the moment they saw each other, and Navarro retreated into the office to avoid arrest. Navarro testified, "I had a feeling they were going to take me to jail for—for whatever reason they could find." So, when Turner followed Navarro inside, Navarro refused to obey Turner. As Navarro explained, he understood the situation but refused to comply:

Q. You were given verbal commands to comply with the officers; correct?

A. I was given commands to put the cigarette out.

19

Q. And you've been arrested multiple times before; is that correct?

A. Yes.

Q. And you understand interaction with police officers; correct?

A. Yes.

Q. And so you understand when an officer is trying to get your attention and have a conversation to figure out what's going on, you comply with those commands; correct?

A. Yes.

Q. But you chose not to?

A. On this day, yes.

Thus, from the outset of the encounter, Navarro disobeyed Turner.

Moreover, Navarro conceded that it was his disobedience that prompted Turner and Braan to enter the office. Yet Navarro continued to disobey Turner throughout the remainder of his interaction with the two officers, and his disobedience escalated into violence after Turner tried to remove Navarro from the office. After Navarro and Turner fell to the floor, Navarro still refused to obey Turner's commands. Navarro agreed that he was wrestling with both Turner and Braan on the floor as Turner tried to handcuff him and that he was physically resisting them in an effort to thwart their efforts to handcuff him.

By his own account, Navarro did not bite Turner until after the encounter had escalated into a physical altercation due to his resistance. In other words, Navarro conceded that he had disobeyed Turner's commands and physically resisted the

20

officers' attempts to handcuff him well before the alleged necessity to bite Turner arose. As Navarro himself summarized his encounter with Turner and Braan, "I resisted and they jumped the gun and they used excessive force on me."

For Navarro to have been entitled to a necessity instruction, there must be evidence that his conduct—biting—was "immediately necessary to avoid imminent harm." PENAL § 9.22(1). The term *necessary* is not defined in the statute, so we must give the word the meaning it is afforded by common usage. *See Lopez v. State*, 600 S.W.3d 43, 46 (Tex. Crim. App. 2020) (court may look to standard dictionaries to ascertain common usage of term undefined by statute that lacks technical meaning). *Necessary* ordinarily means "required to be done," which is consistent with the concept of *necessity*, which ordinarily entails "the fact of being required or indispensable." NEW OXFORD AMERICAN DICTIONARY 1171 (3d ed. 2010).

In the context of the defense of necessity, the doctrine of provoking the difficulty recognizes that, by definition, an actor's criminal conduct cannot be said to be required in any but the most attenuated sense of the word when it is his own prior actions that lead him to resort to criminality. *See McFarland*, 784 S.W.2d at 54 (defendant who tries through criminal means to disentangle himself from difficulty of his own making cannot avail himself of defense of necessity). For example, one who unlawfully resists detention or arrest by peace officers cannot claim that later criminal conduct, such as an assault, is a necessary response to any

21

further efforts to detain or arrest him that his initial resistance precipitates. *See Maldonado v. State*, 902 S.W.2d 708, 711–12 (Tex. App.—El Paso 1995, no pet.) (rejecting defendant's "unstated theory that someone fleeing detention can invoke the defense of necessity to justify his attempt to disarm and shoot a peace officer" in appeal in which defendant argued evidence gave rise to reasonable inference that he fought officers to avoid being shot). That is exactly the situation before us: Navarro disobeyed commands and physically resisted detention and then later bit an officer in the ensuing altercation that his disobedience and resistance precipitated. Because Navarro conceded in his own testimony that he disobeyed and resisted before Turner obstructed his breathing and he bit Turner in response, Navarro was not entitled to a jury instruction on the defense of necessity with respect to the bite, and the trial court did not err in refusing to include a necessity instruction in the jury charge.

*Juarez*, the decision on which Navarro relies, does not mandate a different result. Properly understood, *Juarez* is not inconsistent with today's result.

In *Juarez*, the Court did not address the provoking-the-difficulty doctrine. 308 S.W.3d at 400–06. The parties did not raise the doctrine. *Id.* They presumably did not do so because the officers' and defendant's accounts differed as to whether the defendant unlawfully resisted detention from the outset. *Id.* at 399–401.

According to the officers, they were responding to a 911 call from a resident of an apartment complex who reported that three men were trying to break into cars

22

in the parking lot. *Id.* at 399. When the officers arrived, they snuck up on these men and yelled, "Stop, police." *Id.* The three men fled, and the officers pursued. *Id.*

The officer who chased the defendant later found him sitting on some steps. *Id.* at 399–400. The defendant initially put his hands in the air, but when the officer tried to handcuff the defendant, the defendant pulled away. *Id.* at 400. The officer then grabbed the defendant, the two fell to the ground, and a struggle ensued. *Id.* In the struggle, the officer managed to restrain the defendant face-down on the ground, where the defendant continued resisting and verbally abusing the officer. *Id.* When the officer tried to radio for assistance, the defendant managed to gain enough freedom of movement to bite one of the officer's fingers. *Id.* The defendant regained his feet when the officer stood up in an effort to get the defendant to stop biting him. *Id.* Ultimately, the defendant did not stop biting the officer until another officer arrived and hit the defendant. *Id.* Eventually, officers subdued the defendant. *Id.*

The defendant told a different story. He testified that one of his two confederates said someone was watching them, so the three took off running. *Id.* The defendant heard someone yell "Stop," not "Stop, police." *Id.* Thus, the defendant said that he did not know he was fleeing from the police. *Id.* According to the defendant, while he was sitting on the steps trying to catch his breath some time later, someone jumped on him and slammed him to the ground. *Id.* The defendant did not realize this someone was a police officer until he subsequently heard the

23

officer's radio. *Id.* But by this point, the defendant's head was being pressed into the dirt and he felt like he was suffocating. *Id.* So he bit the officer because he thought he might die otherwise. *Id.* The defendant maintained that he stopped biting the officer when the officer stood up. *Id.* The defendant said that he tried to surrender at this point, but the other officers who later arrived tuned him up anyway. *Id.*

The defendant was tried for aggravated assault on a peace officer with a deadly weapon for the bite. *Id.* He requested a jury instruction on the necessity defense, which the trial court refused to give. *Id.* at 400–01. On appeal, the court of appeals held that the defendant was entitled to the necessity instruction. *Id.* at 401. The Court of Criminal Appeals disagreed with some of the intermediate appellate court's analysis, but agreed with the result, holding that the defendant was entitled to the necessity instruction because he had admitted to the offense and testified that he only bit the officer because he had to do so to save his own life. *Id.* at 401–06.

But *Juarez* differs from the case before us in that, unlike Navarro, the defendant in that case did not testify that he disobeyed and resisted from the outset. On the contrary, he claimed that he did not even know he was interacting with the police until he was already on the ground and losing the ability to breathe. In other words, by the defendant's account, he did not provoke the difficulty that required him to bite the officer. Navarro, on the other hand, did provoke the difficulty that required him to bite Turner by knowingly disobeying and resisting from the first and

continuing to disobey and resist throughout the encounter. Navarro already had one hand in cuffs and was physically resisting Turner's efforts to cuff his other hand when he bit Turner's arm. In his own telling, Navarro's need to bite Turner arose only after he had resorted to violence to prevent Turner from handcuffing him.

In sum, when there are factual disputes about necessity or the provoking-the-difficulty doctrine that a jury could resolve in the defendant's favor, the trial court must instruct the jury on the defense of necessity upon request. *See Juarez*, 308 S.W.3d at 405 (trial court must instruct jury on defense even when evidence supporting defense is weak or contradicted). But a defendant, through his own testimony, can render the defense of necessity inapplicable by unequivocally admitting he provoked the difficulty that purportedly made his criminal conduct necessary. *See McFarland*, 784 S.W.2d at 54; *Maldonado*, 902 S.W.2d at 711–12.

We overrule Navarro's first issue.

## II.    Self-Defense

Navarro contends the trial court erroneously instructed the jury on self-defense with respect to Count III, the count in which the State alleged that he assaulted Turner by biting him. In particular, Navarro maintains that the application paragraph effectively negated the defense altogether by allowing the jury to convict him so long as it found the State had proved beyond a reasonable doubt that he bit Turner to resist an arrest or search knowing that Turner was a peace officer.

## A.      Standard of review

The trial court instructed the jury on self-defense, and Navarro did not object to the content of the self-defense instruction. But because any instruction a trial court gives on a defensive issue must correctly state the law, Navarro's failure to object below does not forfeit the right to challenge an alleged error. *See Mendez*, 545 S.W.3d at 552–53 (when trial court on its own initiative instructs jury on defensive issue, that issue becomes law applicable to case, trial court must correctly state law on that issue, and defendant may challenge error on appeal whether he requested instruction or not). The relevant issues on appeal are whether the trial court erred, and, if so, whether the error caused the defendant egregious harm. *See id.* at 553.

An error results in egregious harm when it deprives the defendant of a fair and impartial trial. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). An erroneous self-defense instruction does not deprive a defendant of a fair and impartial trial if the evidence does not legitimately raise the issue of self-defense. *See Lozano v. State*, 636 S.W.3d 25, 34–35 (Tex. Crim. App. 2021) (trial court's inclusion of self-defense instruction in charge when evidence does not raise self-defense gives defendant windfall of possible acquittal on that improper basis and elevates State's burden by requiring it to disprove defense to which defendant is not entitled and therefore cannot egregiously harm defendant).

## B.     Applicable law

In general, a person may resort to self-defense—use force against another—when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. PENAL § 9.31(a). But the right to resort to self-defense is more limited in the context of resisting a search or an arrest, which includes being placed under restraint or taken into custody. *Steele v. State*, 490 S.W.3d 117, 131–32 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Ordinarily, the use of force is not justified "to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's presence and at his direction, even though the arrest or search is unlawful." PENAL § 9.31(b)(2). One may only resist an arrest or search:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

*Id.* § 9.31(c).

Like necessity, self-defense is a defense of confession and avoidance. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020). Thus, the defendant cannot both invoke the defense of self-defense and flatly deny the charged conduct. *Id.*

The defendant bears the burden to adduce evidence that would support a rational finding in his favor as to self-defense. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Once the defendant has done so, the State then bears the burden of persuasion to disprove self-defense beyond a reasonable doubt. *Id.* Like any other defense, if the evidence does not raise self-defense, then the trial court should not instruct the jury on it. PENAL § 2.03(c); *see Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (defendant entitled to self-defense instruction if issue raised by evidence but when evidence, viewed in light most favorable to defendant, does not establish self-defense, defendant is not entitled to instruction).

### C. Analysis

### 1. Erroneous charge

The trial court included instructions on self-defense in the abstract as well as instructions on the defense in the application paragraph for Count III, the count in which the State alleged that Navarro assaulted Turner by biting him. The trial court did not include self-defense instructions in the application paragraphs pertaining to any of the other charged offenses. Navarro does not contend on appeal that the trial court should have instructed the jury on self-defense as to the other charged offenses. His complaint is that the instruction the trial court did include misstates the law.

In the abstract, the trial court instructed the jury on self-defense as follows:

28

The defendant is not required to prove self-defense. Rather, the State must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct.

Generally, a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.

The use of force against another is not justified:

(1) in response to verbal provocation alone; or

(2) to resist an arrest that the actors knows is being made by a peace officer, even though the arrest is unlawful, unless (a) before the actor offers any resistance; (b) the peace officer uses or attempts to use greater force than necessary to make the arrest; and (c) the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's use or attempted use of greater force than necessary.

In the application paragraph to Count III, the trial court instructed as follows:

Now bearing in mind the foregoing instructions, if you unanimously believe from the evidence beyond a reasonable doubt, that the Defendant, Jeremiah Navarro, on or about the 25th day of April 2014, in the County of Comal, and State of Texas, as alleged in the indictment, did then and there, intentionally, knowingly, or recklessly cause bodily injury to B. Turner by biting the arm of the said B. Turner, and the Defendant did then and there know that the said B. Turner was then and there a public servant, to-wit: police officer, and that the said B. Turner was then and there lawfully discharging an official duty, to-wit: arresting or detaining the said Defendant, then you next consider the issue of self-defense.

Now bearing in mind the foregoing instructions on the issue of self-defense, you must determine whether the State has proved, beyond a reasonable doubt, one of the following elements:

1. the Defendant did not believe his use of force was immediately necessary to protect himself against B. Turner's use of unlawful force; or

29

2. the Defendant's belief was not reasonable; or

3. the Defendant's use of force was to resist an arrest or search being made by B. Turner and the defendant knew B. Turner was a peace officer.

You must unanimously agree that the State has proved, beyond a reasonable doubt, either element 1, 2, or 3 listed above. You need not agree on which of these elements the State has proved. If you find that the State has failed to prove, beyond a reasonable doubt, either element 1, 2, or 3 listed above, you must find the Defendant "not guilty." If you unanimously agree the State has proved, beyond a reasonable doubt, each of the elements of the offense of Assault Against A Public Servant, and you unanimously agree the State has proved, beyond a reasonable doubt, either element 1, 2, or 3 listed above, you will find the Defendant, Jeremiah Navarro, "Guilty" of the felony offense Assault Against A Public Servant, as charged in the indictment and so say by your verdict.

However, if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant of the felony offense of Assault Against A Public Servant, as alleged in the indictment, and say by your verdict "Not Guilty."

We agree with Navarro that the application paragraph is erroneous. In that paragraph, the trial court directed the jury to reject Navarro's defense of self-defense and find him guilty so long as the jury found the State had proved beyond a reasonable doubt that he was resisting arrest and knew Turner was a peace officer. This is contrary to the law, which provides that one may use force to resist arrest if, before offering any resistance, the peace officer uses or attempts to use greater force than necessary to make the arrest, and when and to the degree one reasonably believes the resistance is immediately necessary to protect himself against the officer's use or attempted use of greater force than necessary. PENAL § 9.31(c).

30

The State argues that the application paragraph's proviso to bear "in mind the foregoing instructions on the issue of self-defense" in the abstract part of the charge renders the charge errorless when considered as a whole. Here, we disagree.

We do not quarrel with the general proposition that we must consider the jury charge as a whole when evaluating whether it is erroneous. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). When considered as a whole, however, the instant charge does not correctly state the applicable law of self-defense. While the abstract part of the charge correctly instructed the jury about the circumstances in which a defendant may be justified in using force to resist arrest, the application paragraph directly contradicted these previous instructions by stating that the jury could find the State had disproved self-defense in this case merely by proving that Navarro was resisting arrest and knew Turner was a peace officer. When, as here, the application paragraph of the charge misstates the law and contradicts a prior correct statement of the law in the abstract part of the charge, the charge as a whole is erroneous. *See Gelinas v. State*, 398 S.W.3d 703, 705, 708–10 (Tex. Crim. App. 2013) (holding that charge misstating law in application paragraph was erroneous but considering abstract part's correct statement of law in assessing whether defendant was egregiously harmed by erroneous misstatement of law). The application paragraph's proviso incorporating by reference the abstract part of the

charge does not alter the erroneous nature of the charge as a whole. *See id.* at 708–09 (considering similar proviso in assessing extent of harm caused by error).

## 2.    Egregious harm

Nonetheless, we hold the application paragraph's erroneous statement of the law of self-defense in the context of an arrest did not egregiously harm Navarro. In this case, it is undisputed that Navarro resisted Turner's attempt to handcuff him before Turner engaged in the conduct that allegedly obstructed Navarro's breathing and led Navarro to bite Turner in self-defense. This circumstance rendered self-defense inapplicable as a matter of law. Thus, any purported error in the way in which the trial court instructed the jury on self-defense was effectively an error in Navarro's favor because Navarro was not entitled to a self-defense instruction.

Whether the defendant offered "any resistance" before the peace officer allegedly used or attempted to use greater force than necessary to arrest or search the defendant is a threshold issue whenever a defendant asserts self-defense in the context of an arrest or search. *See* PENAL § 9.31(c)(1) (allowing self-defense solely when actor resorts to force "before the actor offers any resistance"). For the defendant to be entitled to a self-defense instruction, there must be some evidence that the defendant began to resist the arrest or search only after the peace officer used or tried to use greater force than necessary. *See Bowen v. State*, 187 S.W.3d 744, 747 (Tex. App.—Fort Worth 2006, no pet.) (stating that jury could find self-defense if it

credited evidence that deputy used greater force than necessary to arrest before defendant offered any resistance but could not have done so if it credited evidence that deputy used excessive force after defendant offered resistance). If the evidence is undisputed that the defendant offered resistance first, then the defendant is not entitled to a self-defense instruction because the evidence cannot support a jury finding in favor of the defense. *See id.*; *see also* PENAL § 2.03(c) (trial court is not to submit defensive issue to jury unless evidence is admitted supporting defense).

On appeal, Navarro does not specify what particular conduct by Turner constituted the use or attempted use of greater force than necessary to make an arrest. At trial, in closing, his counsel argued that Navarro bit Turner because Turner was preventing Navarro from breathing by being on top of him.[2] But this act—physically

---

[2]  We note that Navarro has not asserted that any other conduct by Turner constituted the use or attempted use of force greater than necessary to make the arrest. Nor do we think Navarro could do so on this record. For example, Navarro testified that Turner had his hand on his firearm or taser at the beginning of the encounter, but this is not the use or attempted use of force. *See Evans v. State*, 876 S.W.2d 459, 464 (Tex. App.— Texarkana 1994, no pet.) (touching of weapon was not use or attempted use of force). Navarro also testified that Turner tried to pull him out of the office before the two of them fell to the floor, but this is not the use or attempted use of greater force than necessary to arrest. *See Goddard v. State*, 154 S.W.3d 231, 232 (Tex. App.—Amarillo 2005, no pet.) (mere act of grabbing defendant's arm is not excessive force); *Flores v. State*, 942 S.W.2d 735, 737–38 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (officer's grabbing of defendant's arms, in and of itself, usually not sufficient to show officer used greater force than necessary to make arrest). Navarro also testified that Turner tasered him once they had fallen to the floor, but this too cannot support an excessive-force claim, given that Navarro could not recall how many times he was tased, other than more than once, concedes he was disobeying Turner's commands, and continued to resist being handcuffed after he was tased. *See Evans*, 876 S.W.2d at 464– 65 (officer's pulling of defendant's arm behind his back was not excessive force given

obstructing Navarro's ability to breathe—cannot support a defense of self-defense, given Navarro's version of events. By Navarro's own account, he offered resistance to Turner's efforts to handcuff him before Turner used this allegedly excessive force. According to Navarro, he and Turner fell to the floor due to the transmission fluid on the floor. In the ensuing struggle between the two on the floor, Turner managed to cuff one of Navarro's hands. But Navarro successfully resisted Turner's efforts to cuff his other hand. In Navarro's telling, his resistance to being handcuffed preceded Turner's alleged use of greater force than necessary, the physical obstruction of Navarro's ability to breathe, that led Navarro to bite Turner. Thus, Navarro's own account renders the defense of self-defense inapplicable because he admitted that his resistance preceded Turner's alleged excessive force. *See* PENAL § 9.31(c)(1); *see, e.g.*, *Damian v. State*, 776 S.W.2d 659, 663–64 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (defendant not entitled to rely on self-defense because defendant first resisted arrest by barricading himself in room); *see also MacDonald v. State*,

that defendant had repeatedly told officer he would not allow himself to be arrested and was trying to leave officer's presence); *Szumny v. State*, No. 13-97-00902-CR, 1999 WL 33757425, at *3 (Tex. App.—Corpus Christi Sept. 30, 1999, no pet.) (not designated for publication) (officer's placement of knee on defendant's back not excessive given that it did not endanger defendant's health, defendant continued to struggle, and officer was able to handcuff him solely with aid of another person); *cf. Hereford v. State*, 339 S.W.3d 111, 126 (Tex. Crim. App. 2011) (officer's repeated application of taser to sensitive part of defendant's body to get defendant to relinquish drugs long after his arrest and while he was in handcuffs was excessive force); *Perez v. State*, No. 02-12-00147-CR, 2013 WL 1759900, at *2 n.3 (Tex. App.—Fort Worth Apr. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (evidence defendant had been tased 26 times supported claim that he resisted arrest due to excessive force).

761 S.W.2d 56, 60–61 (Tex. App.—Houston [14th Dist.] 1988, pet ref'd) (trial court did not err in refusing requested self-defense instruction when defendant's own version of events about arrest did not raise self-defense).

In sum, although erroneous, the trial court's self-defense instruction gave the jury a chance to acquit Navarro based on the defense. Because Navarro was not entitled to the defense, any error benefitted Navarro and thus did not deprive him of a fair and impartial trial. *See Lozano*, 636 S.W.3d at 34–35; *see also Hawkins v. State*, No. 14-96-01389-CR, 1998 WL 429623, at *2–3 (Tex. App.—Houston [14th Dist.] July 30, 1998, pet. ref'd) (not designated for publication) (no egregious harm even though trial court incorrectly instructed jury on self-defense because error benefited defendant). Therefore, the error raised by Navarro on appeal cannot be said to have caused him the kind of egregious harm necessary to require reversal.

We overrule Navarro's second issue.

## CONCLUSION

We affirm the trial court's judgments.

Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Guerra.

Publish. TEX. R. APP. P. 47.2(b).

35